SAMUEL N. POWERS v. STATE OF NEBRASKA.

FILED DECEMBER 6, 1905. No. 14,182.

1. Misconduct of the county attorney in the argument of a case will work a reversal, where it is reasonably apparent that such misconduct worked prejudice to the defendant.

2. Criminal Law: EVIDENCE OF ADMISSIONS: ERROR. A witness was present and heard statements made by the defendant, which the state offered as admissions of guilt. These admissions the court refused to allow in evidence, for the reason that they appeared to be made while under fear of bodily harm. The witness referred to testified at the preliminary hearing, and there stated the admission of the defendant as he understood and remembered it. In a private conversation between the defendant and the witness previous to the trial in the district court, the defendant disputed the correctness of the testimony of the witness given at the preliminary examination and claimed that he had incorrectly quoted his language. The witness replied

that his claimed admission was in the language given by him at the preliminary hearing, at the same time repeating it. This conversation was admitted in evidence by the court as tending to show an admission of guilt on the part of the defendant. *Held* error.

3. Adultery: TRIAL: MISCONDUCT OF COUNSEL. The defendant was on trial for adultery, charged to have been committed with a married woman, who was called by the state as a witness. When interrogated regarding her relations with the defendant, she claimed her privilege and refused to testify. The county attorney, in his argument to the jury, commented upon her conduct in this respect, asserting that it was proof of her guilt. *Held*, under the circumstances of the case, that this constituted prejudicial error.

4. ————: ————. It is error for the judge to absent himself from the court room, out of the sight and hearing of the parties, during the argument of a case, unless by consent and agreement of the parties interested, which may work a reversal of the judgment rendered in the action.

ERROR to the district court for Hamilton county: BEN-JAMIN F. GOOD, JUDGE. *Reversed.*

*Stark & Grosvenor*, for plaintiff in error.

*Norris Brown, Attorney General, William T. Thompson* and *M. F. Stanley, contra.*

DUFFIE, C.

An information was filed against the plaintiff in error charging him with adultery with one Maud Cattron, the wife of William Cattron, who was the complaining witness in this case. On the trial Maud Cattron was called as a witness by the state. Being examined by the county attorney, she stated that she was the wife of William Cattron, the complaining witness, and had been acquainted with the defendant for about seven years. She further testified that she had seen the defendant on the 18th of May, 1904, both at her own house and at her husband's livery barn. She was then asked to state to the jury what took place between Mr. Powers and herself on or about the 18th

of May, 1904, and replied that she did not care to answer, and claimed her privilege not to testify. Her claim of privilege was sustained by the court, and she was dismissed from the stand. In his argument to the jury the county attorney called attention to the refusal of Mrs. Cattron to testify, in the following language: "I call your attention to the witness that comes on the witness stand and hides behind her constitutional privilege and exemptions. You would be justified as taking that as a confession of her guilt." Exceptions were immediately taken to this line of argument by the attorneys for defendant, but the presiding judge being absent in his private room preparing his instructions to the jury, no immediate ruling of the court could be had until the reporter informed the judge that objection was being taken to the line of argument pursued by the county attorney, whereupon he immediately returned to the bench, when that part of the argument objected to was stated in his presence by counsel for the defendant, and the court thereupon stated to the county attorney that he should desist from pursuing that line of argument, and he orally charged the jury that they should pay no attention to the fact that the witness, Maud Cattron, had claimed her constitutional and statutory right to refuse to testify, or the reference to such fact made by the county attorney, and that such failure on her part to testify should not be taken against the defendant.

The facts above stated are shown by an affidavit filed by the defendant in support of his motion for a new trial, as well also as a record entry made and certified by the trial judge and attached to the bill of exceptions. The defendant's affidavit is not included in the bill of exceptions, and it is objected that this court cannot consider it, or the facts therein recited, for that reason. This is undoubtedly the general rule, but the record in this case contains the certificate of the trial judge referring to and identifying the defendant's affidavit, and clearly, as we think, makes it as much a part of the record in the case as his own statement. In his certificate the trial judge does not recite the facts

stated in the affidavit, but refers this court to the affidavit itself for the facts set forth, and we think it would be a grave injustice to the defendant to ignore, upon technical grounds, an affidavit called to our attention by the trial judge. What inference, if any, might the jury draw from the refusal of Mrs. Cattron to testify relating to her relations with the defendant? If the jury were warranted in drawing the inference that she was guilty of adultery with the defendant, that, of course, would go to establish his guilt, and counsel for the state might properly refer in argument to any circumstances surrounding the case from which the jury might infer the guilt of the party on trial. This is one view of the case. Another, and we think a better, view is that the refusal of a witness to testify, because such testimony might be used in a criminal prosecution against him or because it would subject him to humiliation and disgrace, is not a fact or circumstance which may be considered as tending to prove the guilt of the defendant on trial. The law is plain that a witness need not give testimony which would tend in any degree to prove him guilty of a criminal offense or which would subject him to humiliation and disgrace. The exercise of this privilege on his part cannot, we think, in any legitimate degree be considered as tending to prove the guilt of the party on trial. Let us see what the result of any other rule would be? Two parties, man and wife, seek to establish the charge of adultery with the wife against another. The wife is put upon the stand to prove the charge. She is told of the privilege which the law extends to her of refusing to testify. She claims that privilege, knowing well that she could not truthfully testify to the guilt of the defendant. Can it be said that the law would sanction in this way the conviction of a man, not upon statements of fact testified to by a witness, but upon the refusal of the witness to state any facts? The law will not be so unjust as to impute guilt to one upon trial because a witness called by the state refuses to give evidence upon a question which might or might not be used against him. We think that no inference against the inno-

cence of the defendant could be drawn, or should be allowed, from the refusal of Mrs. Cattron to testify upon the question of the relations existing between them. This being the case, that circumstance should not have been referred to by the county attorney in his argument; and the only question remaining is, did the admonition of the judge and his instructions to the jury to disregard the argument, and not to allow the refusal of Mrs. Cattron to testify to influence them against the defendant, cure the error? The general rule appears to be that, unless the appellate court is satisfied that prejudice to the defendant resulted from misconduct of counsel in the argument of the case, it does not constitute reversible error. See extended note to *People v. Fielding*, 158 N. Y. 542, 46 L. R. A. 641.

In the present case the testimony tending to show the guilt of the defendant is not of a satisfactory character. The husband of Mrs. Cattron, it is true, testifies that on the night of the 18th of May, 1904, he was aroused from his sleep about 11 o'clock, and went to the rear of his house and looked out through a glass door in the kitchen, and saw the defendant and his wife in the act of sexual intercourse. He immediately returned and went back to bed. He said nothing of it to anyone. He made no complaint. There were trees and shrubbery in his back yard. There were no lights nearer than about 60 feet from where he claims to have seen the parties. The jury might well have doubted his ability to recognize them, and doubted his unusual and unnatural conduct if he did—conduct that cannot be understood or explained in the ordinary man. A week or ten days after this, Cattron and the defendant had some trouble in Cattron's livery barn growing out of the claimed intimacy between the defendant and Mrs. Cattron. Two witnesses were called by the state to prove admissions made by the defendant during and shortly after that trouble, but the court ruled out these admissions, upon the ground that serious threats had been made against the defendant and that his statements were made under such circumstances as to annul their force as evidence. Two of these witnesses

testified upon the preliminary hearing, giving the defendant's admissions as they understood them on that trial. Shortly before his trial in the district court the defendant had a conversation with these witnesses relating to their testimony on his preliminary examination, in which he claimed that they were mistaken in the statements made by him, and in which they asserted that they were not mistaken, that their testimony to the effect that he had admitted being sexually intimate with Mrs. Cattron was true. The court allowed these later conversations to be given to the jury. If, as held by the trial court, the defendant's statements relating to his intimacy with Mrs. Cattron, made on the 25th of May, 1904, were made under such circumstances of apparent peril and bodily danger as to make them inadmissible, it is quite evident that declarations of the witnesses made to the defendant at a later date, to the effect that he did make such admissions, ought not to be used against him. But a more serious objection than this exists. This admission, claimed to have been made by the defendant, was not testified under oath by the witnesses. They testified only that, in a talk they had with the defendant at a time when they were not under oath, they told him he admitted that he had been criminally intimate with the woman. This is not sworn testimony and cannot be used to support a verdict. The testimony of the husband and of these two witnesses in this later conversation, to which we have referred, is the only evidence of guilt upon which the verdict rests, and we incline to the belief that the jury must have been largely influenced by their attention being called to the refusal of Mrs. Cattron to testify, and the argument of the county attorney based thereon that this should be taken as a confession of her guilt.

We think also that this case comes within the rule adopted in *Palin v. State,* 38 Neb. 862. In that case, as in this, the trial judge was absent from the court room when the statements objected to took place, but immediately returned to the bench and admonished the attorney to keep within the record, and the attorney himself stated to the

jury that, if he was mistaken, he desired that they should pay no attention to his statements. Under these facts it was said:

"Considerable latitude should always be allowed counsel in the discussion of facts before the jury; but an attorney, and especially a prosecutor in a criminal trial, has no right in arguing a case to state as a fact any matter not borne out by the testimony. The argument in this case was clearly beyond legitimate bounds and was highly prejudicial to the accused. The trial judge likewise erred in permitting the argument to be made while he was absent from the court room."

It often occurs that the trial judge, by consent of the parties, retires to his private room during argument of counsel to prepare his instructions. In such case it would undoubtedly be held that the parties have waived his presence, and that his absence from the court room during the argument, under such circumstances, would not be reversible error; but we think the better rule, especially in criminal cases, is for the judge to be present during the whole trial, and that, if he absents himself without the consent of the defendant on trial, it is error which may call for a reversal of the case.

Upon these grounds, we base our decision that the judgment should be reversed and the cause remanded for another trial.

ALBERT and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for another trial.

REVERSED.