Hodge v. State.

REVERSED.

---

ALBRO L. HODGE v. STATE OF NEBRASKA.

FILED JUNE 2, 1917.    No. 19943.

1. **Criminal Law: TRIAL: INSTRUCTIONS: "REASONABLE DOUBT:" PREJUDICIAL ERROR.** In a criminal prosecution an instruction contained the following language: "You are instructed that, concerning the term 'reasonable doubt' as the same has hereinbefore been used, you are instructed that as a matter of law the doubt which a juror is allowed to retain on his own mind, and under which he should frame his verdict of not guilty, must always be a reasonable one. A doubt produced by undue sensibility in the mind of any juror in view of the consequences of his verdict is not a reasonable doubt. And a juror is not allowed to create sources or materials of doubt by resorting to trivial or fanciful suppositions and remote conjectures as to possible states of facts differing from that established by the evidence." This language has heretofore been disapproved by this court, and under the circumstances in the present case it is deemed prejudicially erroneous.

2. ――――: **RECEIVING PROPERTY WITH UNLAWFUL INTENT: SUFFICIENCY OF EVIDENCE.** The evidence examined and discussed in the opinion, and *held* insufficient to support a judgment of conviction of the crime charged in the information.

ERROR to the district court for Sioux county: WILLIAM H. WESTOVER, JUDGE. *Reversed.*

*J. E. Porter* and *Earl McDowell,* for plaintiff in error.

*Willis E. Reed, Attorney General,* and *Charles S. Roe,* contra.

Dean, J.

Albro L. Hodge, plaintiff in error, hereinafter called defendant, a resident of Dawes county, was informed against by the state upon two counts, the first count charging him with the theft of a bull in Sioux county on August 12, 1916, the property of John E. Shaw, resident in that county. The second count charged him with unlawfully and feloniously receiving the bull with the unlawful and felonious intent of defrauding the owner of his property. On the first count defendant was acquitted. On the second count he was found guilty and was sentenced to serve an indeterminate period of penal servitude of from one to ten years. He brought the case here for review.

Defendant argues that his conviction is not supported by the evidence, and that for this reason, and for other errors as well that appear in the record, the judgment should be reversed.

The record shows that defendant is a farmer and ranchman, engaged in the occupation of buying and selling cattle on the local market, and in shipping stock to Omaha in connection with his stock ranch in Sioux county and his farm in Dawes county. On August 12, 1916, defendant shipped a car-load of cattle from Glen station, in Sioux county, to South Omaha. He directed his son and a hired man to round up a load of cattle from his ranch and take them to the railroad stock-yards at Glen, distant about two miles, for the purpose of loading for shipment. Defendant took no part in the selection of the cattle that were to be shipped, nor in loading them, but only in a general way directed his son and the employee as to the grade of cattle and the sort that he wanted to ship. The cattle so selected for shipment were not recently before the shipment seen by defendant until the morning of August 12, at about the time they were loaded. While the stock was being loaded by defendant's son and the hired man, defendant was engaged in the cattle car putting up a small partition for a blind cow that was included in the shipment that it might be protected from injury by the

other cattle.   Defendant was not at home on the late after-
noon and night of August 11, but was at the home of
George Lakin, a neighbor, at whose place, Mr. Lakin and
his wife testified, he arrived at about 6 or 7 o'clock in the
evening, where he remained through the evening and
until the next morning shortly after breakfast, when he
left the Lakin residence.   Defendant testified that he left
his own ranch at about 4 o'clock in the afternoon of the
11th, going directly to the Lakin residence, and from there
after breakfast the next morning to his ranch, where he
gave general directions about the shipment.   Defendant
testified that while the boys were getting the cattle to-
gether he brought the blind cow to the stock-shipping yard
at the station, and from there he went to the post office,
where he got his grip, and returned to the way-car of the
stock train.   Shortly after 8 o'clock the shipment, accom-
panied by defendant, was on its way to the Omaha mar-
ket, arriving there on August 14.

Four bulls were in the shipment that he sold in the open
market at the South Omaha Exchange.   When the cattle
were inspected for brands, it was found that one bull in
the consignment had the brand "VA" on its left side, that
being the brand of John Howard, a resident of Sioux
county, and also a brand "V" on its left hip.   Defendant
testified that he returned to his home without any knowl-
edge that the branded bull was held up by the stock ex-
change for investigation as to ownership, and that when
his attention was first called to the brands on the animal
in question he believed it to be an animal he had pur-
chased from Al Smith, a long-time resident of Sioux coun-
ty, and a cattle dealer there.   He testified positively that
he did not know of the presence in his shipment of the
animal in question until after his return home, when he
received information to that effect from the stock ex-
change.

Al Smith, the cattle dealer, testified that he handled be-
tween 600 and 700 head of cattle in the 12 months imme-
diately preceding the trial, and that in the summer of

1916 he sold to the defendant a mixed herd of cattle, in which there were four bulls, three red ones and a white faced one, and that the cattle were delivered at defendant's ranch in Sioux county. He said that he had no recollection about the brands on any of the cattle that he sold to defendant. The testimony conflicts in regard to the identity of the animal alleged to have been unlawfully received by defendant on August 12. The brand inspector testified that the animal that was held up out of defendant's shipment had a brand "VA" on the left side, and also a brand "V" on the left hip. When he was asked about the condition of the ears of the animal, he said he never noticed anything peculiar about them. John Howard, the former owner of the bull, testified that the animal he sold to Mr. Shaw had a white face, and that its ears were "either frozen off, or very small ears. I remember I intended to ear-mark him when I got him, and I didn't do it because his ears were very short or frozen off," and that he "figured part of them were gone," and that he was under the impression that the bull he sold to Mr. Shaw had a churn dasher on the jaw, and that he so testified at the preliminary. Mr. Howard, was then asked this question that referred to his testimony at the preliminary: "Q. And you said that was Sides' bull brand? A. I did, and I think yet it was on there. Q. Which jaw? A. The left jaw." It will be borne in mind that Mr. Shaw testified that there were no brands on the animal that he knew of except the "VA" brand on the left side. He also definitely fixed the morning of August 12 as the time when he missed his bull and it disappeared.

Defendant argues that the court erred in giving instruction No. 10, which follows: "You are instructed that, concerning the term 'reasonable doubt' as the same has hereinbefore been used, you are instructed that as a matter of law the doubt which a juror is allowed to retain on his mind, and under which he should frame his verdict of not guilty, must always be a reasonable one. A doubt pro-

Hodge v. State.

duced by undue sensibility in the mind of any juror in view of the consequences of his verdict is not a reasonable doubt. And a juror is not allowed to create sources or materials of doubt by resorting to trivial or fanciful suppositions and remote conjectures as to possible states of facts differing from that established by the evidence. The jury are instructed that if, after a careful and impartial consideration of all of the evidence in the case, they can say that they feel an abiding conviction of the guilt of the defendant, and are fully satisfied to a moral certainty of the truth of the charge made against him, then the jury are satisfied beyond a reasonable doubt." With respect to this instruction, the state in its brief makes this admission: "The first three sentences of the above instruction have been criticized by this court." But it argues that the instruction taken as a whole should not be held to be prejudicially erroneous. The objectionable portion of this instruction may be recognized as having been used in the noted anarchist trial. We again express our disapproval of its use. In the present case it was prejudicial to the defendant. It has been repeatedly held by this court so prejudicially erroneous as to require a reversal, and we so consider its use in the present case. *Brown v. State,* 88 Neb. 411; *Flege v. State,* 90 Neb. 390.

Defendant argues that the court erred in refusing to permit him to file a supplementary motion that was offered in apt time for a new trial "setting forth grounds of newly discovered evidence, and for time to procure the the necessary evidence." Defendant's offer was made to prove by reputable witnesses that John H. Howard after the trial told defendant in the presence of several witnesses that he, Mr. Howard, was "satisfied that the bull I (defendant) sold at South Omaha and for which I (defendant) had been convicted for receiving same knowing it to be stolen was not the bull he (Howard) sold to John E. Shaw." In view of the conflicting testimony on this material point, we believe the court erred in refusing to give defendant a reasonable time to permit the showing

to be made. The record shows that an application supported by affidavit was made to the court by defendant for time to make this showing immediately upon discovery of the fact.

Defendant insists that he was prejudiced by what he terms misconduct of the prosecuting attorney in his closing argument. But the record on this point shows, as the learned trial judge certified, that defendant's counsel promptly took exception to the remarks of the county attorney, and the court at the time directed that official to confine his argument to the testimony, and at the same time admonished the jury to disregard the statement of which the defendant complained. It sometimes happens that an attorney may, in the heat of argument, by use of statements that are not warranted by the record, inject into the mind of the jury a poison that cannot be neutralized by any admonition that the judge may give. And this court has held that such conduct may work a reversal in a case that is otherwise without prejudicial error. *Powers v. State,* 75 Neb. 226.

We do not reverse the present case on the ground of misconduct of the county attorney, but merely refer to it for the reason that the complaint is so often made that we have deemed it well to again express our disapproval of such conduct.

We have not discussed all of the testimony that we find in the voluminous record before us, but deem it sufficient to say that the testimony fails to connect the defendant with the crime with which he is charged.

For the errors appearing in the record, the case is

REVERSED.

SEDGWICK, J. not sitting.