PEOPLE *v.* KELLAR.

1. APPEAL AND ERROR—SUPREME COURT MUST PASS ON RECORD AS PRESENTED—AFFIDAVITS—NEW TRIAL—ABSENCE OF JUDGE FROM COURT ROOM.

On error, the Supreme Court must pass upon the record as presented, and where there is nothing in the record to show that the trial judge was absent from the court room during the trial of a criminal case, a conviction will not be reversed on the affidavits of the defendant and one of his attorneys that the trial judge was absent, filed on a motion for a new trial, especially where the motion was overruled

and the record does not show any request that the trial judge file his reason for overruling the motion.

2. SAME—RECORD—PREJUDICE CREATED BY POLITICAL CAMPAIGN—ROBBERY—CRIMINAL LAW.

Statements in defendant's brief that during the trial a political campaign was on in which the record of the present court for convictions of defendants on robbery charges was constantly brought before the public, cannot be considered by the Supreme Court where there is nothing in the record to indicate that anything said or done in the campaign found any echo in the court room or was reflected in the proceedings resulting in defendant's conviction of the crime of robbery.

3. NEW TRIAL—GREAT WEIGHT OF EVIDENCE—ALIBI—ROBBERY—CRIMINAL LAW.

In a prosecution for robbery, where the defense was an alibi, the issue presented by the testimony of witnesses for defendant that he was in Chicago at the time the offense was committed in Detroit, as against the positive testimony of the victim that defendant was the man who held a gun on him while he was being robbed, was for the jury, and it cannot be said that the verdict of guilty was so against the great weight of the evidence that the trial court was in error in denying defendant's motion for a new trial therefor.

Error to recorder's court of Detroit; Heston (William M.), J. Submitted April 15, 1921. (Docket No. 122.) Decided June 6, 1921.

Daniel J. Kellar was convicted of robbery while armed, and sentenced to imprisonment for not less than 10 nor more than 25 years in the State prison at Jackson. Affirmed.

*Sibley, Armstrong, McNair & Mead,* for appellant.

*Merlin Wiley,* Attorney General, *Paul ,W. Voorhies,* Prosecuting Attorney, and *John V. Brennan,* Assistant Prosecuting Attorney, for the people.

MOORE, J.   Daniel J. Kellar, the defendant, was convicted in the recorder's court of the city of Detroit, on a charge of robbery while armed.   Harry M. Krull testified he was robbed about 8:15 p. m. on the night of February 29, 1920; that while walking along the north side of Peterboro street in the city of Detroit, he was stopped for an instant at the center of the intersection of the street with an alley by two men, who stepped in front of him and ordered him to walk into the alley; that he obeyed the order, and while standing in the shadow of a nearby building the defendant covered him with a revolver, while the other removed from him $49.85 in cash, a cigarette case marked "H. M. K." and a gold watch.   This property except the money was later found in certain Chicago pawnshops, whose pawn tickets were found on the persons of one Chauncey Gavin and James Brindell. Sergeant William H. Killeen of the detective bureau of the Chicago police department arrested James Brindell, Chauncey Gavin and Earl Gamasche at about 8 o'clock in the morning of March 11, 1920, at a rooming house on Michigan avenue in the city of Chicago; later in the morning defendant Kellar was arrested at the same place on Michigan avenue where all four men had been rooming together.   The men were searched by the detectives and three pawn tickets were found.   Two of these pawn tickets were on the person of Chauncey Gavin, one of which under his own name called for a cigarette case marked "M." which had been pawned under date of March 2d, at 11:15 a. m. in the Federal Loan Bank of Chicago.   The other ticket found on Gavin's person called for the cigarette case marked "H. M. K." which had been stolen from Krull.   This case was pawned under the name of Harry Kearn on March 2d, at 11:40 a. m. in Bomash's pawn shop.   The ticket found on James Brindell called for the watch which had been stolen from Krull and was

pawned under Brindell's own name on March 2d, at
11:15 a. m. in the Federal Loan Bank.   On the day
of defendant Kellar's arrest a pawn ticket was found
on his person, which called for a suit of clothes, pawned
by himself on the 5th day of March, at 12:10 p. m.
in Englander's pawn shop.

Defendant Kellar's contention was that he had never
been in Detroit, and that he was in Chicago when Mr.
Krull was robbed.   The jury returned a verdict find-
ing defendant Kellar guilty as charged in the informa-
tion.   He was later sentenced to be confined in the
State prison at Jackson from 10 to 25 years, with the
recommendation that he serve 15 years.   Defendant's
counsel afterwards moved for a new trial upon the
grounds of error and newly-discovered evidence, which
motion was denied, whereupon a writ of error was
taken out to the Supreme Court.

There are many assignments of error; one that re-
ceives great attention from the counsel is that the trial
judge erred by absenting himself from the court room
during the greater part of the trial, counsel citing
*Meredeth* v. *People,* 84 Ill. 479; *Schintz* v. *People,* 178
Ill. 320 (52 N. E. 903) ; *Powers* v. *State,* 75 Neb. 226
(106 N. W. 332) ; *O'Brien* v. *People,* 17 Colo. 563 (31
Pac. 230).   A reading of the opinions in those cases
will show they are clearly distinguishable from the
instant case.

In the record before us there is nothing to indicate
from the beginning of the trial until after sentence
was pronounced that the trial judge was absent at
any time.   The only statement in the record that the
court was absent is found in the affidavit of the de-
fendant and in the affidavit of one of his attorneys,
which were filed on a motion for a new trial.   A
calendar entry shows this motion was denied Novem-
ber 15, 1920.   The record does not show any request
that the trial judge file his reason for overruling the

motion for a new trial, or that he did file any reasons. Counsel also insist that there was reversible error because the trial judge was absent and the verdict was received by the clerk in his absence.

The record reads:

"Verdict. The jury returned a verdict against defendant of guilty as charged. Before the Honorable William M. Heston, judge of the recorder's court, on October 14, 1920."

We quote from the brief:

"It may be argued that counsel for defendant should have made more objections to the actions of the court in leaving the court room. We cannot believe, however, that such contention should merit serious consideration, for in the trial of a criminal case no counsel wisely could or should be expected to place himself in a position of criticizing the actions of the court when such objections would only serve to antagonize the court and jury and seriously jeopardize the interests of the defendant as well. The duties of the court are clear and explicit. It knows or should know its own duties and methods of handling the trial and conduct of cases, and if these duties are neglected or violated it seems to us that one exception is as good as a dozen.    *    *    *

"The trial of the cause was conducted during the heat of a political campaign, in which one of the foremost accomplishments of the present court, which was constantly and repeatedly brought to the public's attention, was the record in convictions of defendants on robbery charges. It is a known fact that the juries during the September term of court fairly outdid themselves in obtaining convictions against those accused of this crime. At such a time and under such circumstances, what other impression could such action on the part of the court convey to the jury than that the court was clearly convinced of the guilt of the defendant at the bar and consequently was leaving the matter entirely in their hands."

Counsel have some duties to perform. This court

must pass upon the record which is presented to us. Neither we nor the counsel are justified in going outside of the record. There is nothing to indicate that anything said or done in the campaign to which reference is made found any echo in the court room or was reflected in the proceedings. There is nothing in the record to indicate that during the trial any absence of the trial judge attracted the attention of either the defendant or any of his attorneys. At least it did not call out any request or any comment that appears in the record. Under these circumstances it cannot be said there was reversible error. See the cases cited by counsel for appellant which we have already mentioned in this opinion.

Counsel strenuously urge the court erred in not granting a new trial because the verdict was against the weight of the evidence. As already indicated the defense was that of an alibi. Witnesses were produced who testified that defendant was in Chicago, one of them testifying that he was dancing with her a great deal at a dance hall, known as the White City, and did not leave her until about 2 o'clock in the morning at her home. Another witness testified she had a talk with him as he was about to leave the dance hall. Other testimony was produced. The issue was sharply defined. Was the defendant in Chicago or was he at Peterboro street in Detroit at the time of the robbery?

We have already called attention to some of the testimony, we now quote briefly from the testimony of Mr. Krull:

"This man stepped in front of me and stopped me and says 'step in the alley,' and then I realized that something was going to happen and then I sparred for time by saying, 'What's the idea?' He says, 'Never mind, step into the alley.' By that I looked down and saw he held a gun on me by that time. He grabbed

hold of my coat and pulled me, and I walked into the alley with him.      *      *      *

"Q. Did you see the gun?

"A. Yes, I saw the gun.

"Q. What kind of a gun?

"A. Nickel plated.

"Q. Where was it pointed?

"A. Right against my stomach.

"Q. You say you walked in the alley with this man?

"A. Yes, he had hold of my overcoat.

"Q. How many were there?

"A. Two.

"Q. What happened after you got in the alley?

"A. Walked about thirty or forty feet, about the center of the lot on the east side of the alley. Then he says: 'Throw up your hands,' then I threw my hands in the air and he stepped back four or five feet with the gun still on me.

"Q. The man with the gun?

"A. Yes, and the other fellow that was with him came up and went through my pockets.      *      *      *

"Q. Is either one of those men in the court room at the present time?

"A. Yes.

"Q. Which is?

"A. The defendant, Dan Kellar.

"Q. The one sitting at the table?

"A. Yes.

"Q. Is there a street lamp near the intersecting alley?

"A. Yes, there is one there. I remember seeing the light from it. I think it was on the south side.

"Q. How close to you was Dan Kellar during this holdup?

"A. At first on the sidewalk right up close to me, his face was within eight inches or a foot of mine. Dan Kellar held the gun and I saw his face at that time. He didn't have any mask on.

"Q. You are positive Dan Kellar is the man that had the gun on you?

"A. Yes."

The court left the issue to the jury in a fair and

full charge. The jury believed Mr. Krull and did not believe the alibi witnesses.

We have examined the other assignments of error but deem it unnecessary to discuss them.

The verdict and judgment are affirmed.

STEERE, C. J., and WIEST, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.