STATE, Respondent, *v.* ZORN, Appellant.

(No. 7,392.)

(Submitted January 28, 1935.  Decided February 19, 1935.)

[41 Pac. (2d) 513.]

*Mr. M. S. Galasso,* Counsel for Defendant on appeal, but not at the trial of the cause, submitted an original and a supplemental brief and made oral argument.

*Mr. Raymond T. Nagle,* Attorney General, *Mr. Enor K. Matson,* Assistant Attorney General, and *Mr. Rudolph Nelstead,* County Attorney of Custer County, for the State, submitted an original and a reply brief; *Mr. Nelstead* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

In the district court of Custer county, on the third day of October, 1934, Henry John Zorn was convicted of the crime of murder in the first degree, and was thereafter sentenced to be hanged. He appealed from the judgment of conviction.

We are asked to reverse the judgment and grant the defendant a new trial upon the sole contention that the court erred in giving Instruction No. 21, over the objection of the defendant. The challenged instruction embodied the oft-approved definition of a "reasonable doubt," found in *Territory* v. *McAndrews,* 3 Mont. 158, but with the prefatory paragraph: "You are instructed that the doubt which a juror is allowed to retain in his mind and under the influence of which he should form a verdict of not guilty, must always be a reasonable one."

The objections interposed to the giving of this instruction were merely that it is ambiguous and does not tend to clarify the expression "reasonable doubt," and that the definition has been, in effect, superseded by that approved in "*State* v. *Jones*." The attack on the instruction by brief on appeal goes no further than to analyze and ridicule the McAndrews instruction; that it "goes no further than to state that 'a reasonable doubt' is a reasonable doubt," and tends to confuse rather than enlighten the jury. It is said that "a person using this method of definition confesses himself incapable of it, and it is hard to believe that any of our judges should have the Soviet mentality, but this is clearly the case herein, and proof thereof is found in the next paragraph: \* \* \* That a doubt is not reasonable which a man may start by questioning for the sake of a doubt."

If these objections and strictures constituted the sole attack upon the instruction, an affirmance of the judgment would be compelled by the former declarations of this court. The Montana Reports contain five cases entitled "*State* v. *Jones*"; the record here does not disclose to which of these the "objections" refer. However, but one of the five (*State* v. *Jones*, 48 Mont. 505, 139 Pac. 441, 447) discusses an instruction on reasonable doubt, but not the instruction here considered. There the court instructed the jury that, "before the jury are authorized to convict the defendant of the crime of murder in the first degree, they should be satisfied from the evidence in the case beyond a reasonable doubt that the defendant killed Robert Johnson willfully, deliberately, premeditatedly, and with malice aforethought." The court held, in effect, that the use of the word "should" did not correctly express the duty of the jury, and that the word "must" should have been used instead, but declared: "We venture the assertion that the average juror does not stop to speculate as to the distinctions in the meaning of such terms as 'must,' 'ought,' and 'should,' all denoting moral obligation, but recognizes the obligation of his official duty enjoined by the use of one of them as not differing in any respect from that enjoined by

the use of the other. The average juror understands, without being told in terms, that in no case may a defendant be convicted unless the evidence establishes his guilt beyond a reasonable doubt.'' The use of the term ''should'' was held to be erroneous, but not reversible error.

Disregarding for the present the first paragraph of the instruction quoted above, the instruction is too well established in this state as the proper instruction to be given on ''reasonable doubt'' to now be the subject of discussion. As given in the *McAndrews Case* in 1878, the definition was taken from *Commonwealth* v. *Webster,* 5 Cush. (Mass.) 320, 52 Am. Dec. 711, and of it this court has said, following the supreme court of California (*People* v. *Strong,* 30 Cal. 151), that the definition of Chief Justice Shaw in the Massachusetts case ''is probably the most satisfactory definition ever given to the words 'reasonable doubt' in any case known to criminal jurisprudence.'' (*State* v. *De Lea,* 36 Mont. 531, 93 Pac. 814, 818.)

However, on presentation of the appeal, counsel, in oral argument, attacks the above prefatory paragraph of the instruction as contravening the rule that a defendant is presumed to be innocent until his guilt is established beyond a reasonable doubt, and thereafter filed a supplementary brief on the question. The state contends that this question cannot be considered because of the provisions of section 11969, Revised Codes 1921, while defendant's counsel insists that that section is repealed by section 12043, under the rule of construction announced in section 5525, Id.

Section 12043 was originally section 2176 of the Penal Code of 1895. It declares that, ''when written charges have been presented, given, or refused, the questions presented in such charges, or in any of the instructions given to the jury, need not be excepted to or embodied in a bill of exceptions, but the written charges and instructions, with the indorsements showing the action of the court, form part of the record, and any error in the decision of the court thereon may be taken advantage of on appeal, in like manner as if presented in a bill of exceptions. * * * ''

Section 11969 is a somewhat lengthy set of rules declaring the "order of trial" in criminal cases. In subdivision 4 the rule is laid down that "no cause shall be reversed by the supreme court for any error in instructions which was not specifically pointed out and excepted to at the settlement of the instructions herein specified, and such error and exception incorporated in and settled in the bill of exceptions." This Act was passed in 1907 (Chap. 82, Laws 1907), and repealed by implication that part, at least, of section 2176, Revised Codes of 1895, permitting a review of alleged error in instructions given, not "specifically pointed out and excepted to at the settlement of the instructions," and "incorporated * * * in the bill of exceptions." Before the Codes of 1907 were adopted, therefore, the legislature had eliminated the liberal rules of practice in this regard, and this court has declared that Chapter 82, Laws 1907, eliminated "everything contained in section 2176, Penal Code, although through an error of the compiler that section was reproduced in the Revised Codes as though it was in full force and effect." (*State* v. *Carmichael*, 62 Mont. 159, 204 Pac. 362, 363.)

Chapter 1 of Part 5 of the Political Code of 1921 deals with the enactment and effect of the Codes, and therein section 5522 provides that, "with relation to each other, the provisions of the four Codes must be construed * * * as though all such Codes had been passed at the same moment of time, and were parts of the same statute"; and section 5525 declares that, "if conflicting provisions are found in different sections of the same chapter or part, the provisions of the section last in numerical order must prevail."

The two conflicting sections under consideration appear in Part 2 of the Penal Code. Yet this court has, at least twice, since the adoption of the Codes of 1921, held that section 11969 is controlling in such a case as this, without reference to the existence in the Codes of section 12043. (*State* v. *Dougherty*, 71 Mont. 265, 229 Pac. 735; *State* v. *Sawyer*, 71 Mont. 269, 229 Pac. 734.) The result reached in these opinions is manifestly correct. In view of the declaration of this court in the *Car-*

*michael Case,* that the section should have been omitted in the 1907 Code, it has no place in the present Code. The manifest inadvertence of a clerical force cannot possibly have the effect of reviving a dead law, which, in turn, repeals an Act of the legislature passed for the purpose of repealing it.

The Code Commissioner who compiled the Codes of 1921 was only authorized to carry into the Codes laws "in force" at the time of codification. (Chap. 195, Laws 1919.) Under a similar Act, it is held that, "if repugnant provisions of prior statutes are compiled and adopted in the General Statutes, it must be presumed that the repugnancy was overlooked, and that it was the intention of the compilers and of the legislature to bring forward the latest expression of the legislative will where irreconcilable inconsistency or repugnancy appears in different sections of the General Statutes, without reference to whether the latest statute appears first or last in the General Statutes." (*Hillsborough County Commrs.* v. *Jackson,* 58 Fla. 210, 50 So. 423, 424, 138 Am. St. Rep. 110, 19 Ann. Cas. 148.) To the same effect see *Syndicate Printing Co.* v. *Cashman,* 115 Minn. 466, 132 N. W. 915.

In California Jurisprudence it is said that their section (Pol. Code, sec. 4484), identical with our section 5525, above, "has no application where the sections were passed at different times." (23 Cal. Jur. 793.) This is undoubtedly the true rule to be applied where, as here, the section "last in numerical order" was repealed prior to the codification, without consideration of the question as to whether or not a repealed provision could be revitalized by the adoption of the Codes.

It follows that the appellant is not entitled to have the question presented on oral argument and by supplemental brief considered on this appeal, for the asserted error in the instruction was not "specifically pointed out and excepted to at the settlement of the instructions, and such error and exception incorporated in and settled in the bill of exceptions."

However, as a man's life is at stake, we are not content to rest an affirmance of the judgment upon this technical rule imposed upon us by the legislature, and will therefore consider

the merits of counsel's attack on the opening paragraph of the instruction. Such action is consonant with justice and humanity, and is in conformity with the practice of the United States courts. (*McNutt* v. *United States*, (C. C. A.) 267 Fed. 670; *Lamento* v. *United States*, (C. C. A.) 4 Fed. (2d) 901.)

The law is that "a defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to an acquittal." (Sec. 11971, Rev. Codes 1921.) Counsel for the defendant contends that the opening paragraph of the instruction on reasonable doubt reverses this presumption, and requires more of the defendant than does the law. Seemingly this is the view of some courts. In Nebraska, instructions embodying such a statement as is here attacked have been held to constitute reversible error entitling the defendant to a new trial. (*Hodge* v. *State*, 101 Neb. 419, 163 N. W. 321, and cases cited.) In the *Hodge Case* the court called attention to the fact that the "objectionable portion" of the condemned instruction was included in the instruction given "in the noted anarchist trial," but in that case (*Spies* v. *People*, 122 Ill. 1, 12 N. E. 865, 987, 17 N. E. 898, 3 Am. St. Rep. 321) the supreme court of Illinois said only of the instruction on reasonable doubt: "We think the law upon this subject was correctly presented to the jury."

In Nebraska it is also said that "a jury * * * ought not to be told that they must 'justify an acquittal,' or that they must find something in the case 'to authorize a verdict of not guilty.'" (*Flege* v. *State*, 90 Neb. 390, 133 N. W. 431, 436.) Similar expressions are found in the Iowa decisions noted, but the use of the criticised phrases is held not to constitute reversible error. (*State* v. *Sipes*, 202 Iowa, 173, 209 N. W. 458, 47 A. L. R. 407; *State* v. *Phillips*, 118 Iowa, 675, 92 N. W. 876; *State* v. *McCausland*, 137 Iowa, 354, 113 N. W. 852.) On the other hand, as in the "noted anarchist trial" instructions embodying the paragraph here attacked, or its equivalent, have been approved in Idaho, Oklahoma, and California. (*State* v. *Louie Moon*, 20 Idaho, 202, 117 Pac. 757, Ann. Cas. 1913A,

724; *Moore* v. *State*, 4 Okl. Cr. 212, 111 Pac. 822; *People* v. *Winters*, 125 Cal. 325, 57 Pac. 1067.)

While it is safer practice on the part of trial courts to confine the instruction on reasonable doubt to the wording of the instruction approved .in the *McAndrews Case*, which is sufficiently lengthy and involved without additions, we find the criticism of the opening paragraph here without merit; it places no additional burden upon the defendant, nor does it require the jury to "justify an acquittal," or to find something in the case to authorize a verdict of not guilty; it but states the corollary to the proposition which is found in section 11971, above. "In case of a reasonable doubt * * * he is entitled to acquittal," but "the law cannot take notice of unreasonable doubts" (*State* v. *Martin*, 29 Mont. 273, 74 Pac. 725, 727, 728), and "a doubt, to authorize an acquittal, must be a real, substantial doubt of defendant's guilt" (*State* v. *Clancy*, 20 Mont. 498, 52 Pac. 267, 268). No juror could have been misled into believing that the rule laid down in the opening paragraph of the instruction imposed any different duty upon him than did the remainder of the instruction; indeed, counsel for the defendant did not conceive such an idea until some time between the filing of his brief and his oral argument.

The prefacing of the approved instruction on reasonable doubt by the criticised paragraph did not constitute reversible error.

Further, in the interest of justice and humanity, we have examined the record made at the trial to determine whether a reasonable doubt as to the defendant's guilt could exist, and find that he was guilty beyond any question of a doubt. He was charged, under section 10955, Revised Codes 1921, with murder committed in the perpetration of burglary; he made a full, frank and voluntary confession. The victim was Lester Jones, an instructor at the State Industrial School in Miles City. In his confession the defendant states that he was a former inmate of the school and was well acquainted with the administration building there, and had robbed the safe

there on a previous occasion; that he planned to rob the safe again and went to Miles City for that purpose, taking with him a flash-light and a revolver; that he got into the office and was looking over the safe when Jones came in. His statement as to the shooting is as follows: "I said, 'For God's sake, Lester, let me out of here,' but he grabbed me and we wrestled over to the chair, and in the meantime I had the gun in this right hand overalls pocket and struggled to get it out of there, and finally got it out and started shooting." Asked the question: "And you took it [the gun] out with the intention of shooting Lester to get away, didn't you?" he answered, "Yes." In addition to the confession there was a large volume of evidence adduced. The evidence amply supports the judgment (*State* v. *Reagin,* 64 Mont. 481, 210 Pac. 86), and the jurors could have returned no other verdict without disregarding their oaths.

Judgment affirmed.

Mr. Chief Justice Sands and Associate Justices Stewart and Anderson concur.

Mr. Justice Morris, deeming himself disqualified, takes no part in this decision.

Rehearing denied February 28, 1935.