McGHEE *v.* STATE.

(*Knoxville*, September Term, 1945.)

Opinion filed October 13, 1945.

G. W. Chamlee and G. W. Chamlee, Jr., both of Chattanooga, for plaintiff in error.

Nat Tipton, Asst. Atty. Gen., for the State.

Mr. Justice Chambliss delivered the opinion of the Court.

This is an appeal from a conviction under an indictment with two counts, charging (1) forgery and (2) knowingly uttering a forged paper. The jury rendered a general verdict of guilty, with the punishment fixed at eleven months and twenty-nine days.

The assignments of error challenge the sufficiency of the evidence and the refusal of the trial judge to grant a new trial upon the strength of affidavits offering evidence alleged to be newly discovered. Incidentally, complaint is made of the action of the trial judge in striking certain of these affidavits because of their insufficiency and irrelevancy; and, also, objection is urged to the admissibility of a confession made to a police officer.

The defendant is a young man eighteen years of age employed at night at Signal Mountain Cement Company, located in a suburb of Chattanooga. He resided with a married sister in upstairs rooms above the store of the prosecutor, Mose Sacks, located on Market Street, in Chattanooga. The parties were well acquainted. This forgery case was heard at the same time with another

case in which the defendant was prosecuted on a charge of assault with a pistol in the course of a personal difficulty shortly after the forged check had been presented to the prosecutor in his store and cashed by him. The jury passing on the two charges at the same time acquitted the defendant in the assault case, apparently upon the theory that the prosecutor was the aggressor, provoked, as the record indicates, by the discovery of the forgery and incident to an attempt on his part to force the defendant to return to him the money advanced upon this forged check. Due in part to the hearing of these two charges at the same time, the record is somewhat confused and unsatisfactory. Unraveling the record as best we can, the relevant facts with regard to the passing of the check appear to be about as follows:

On a Saturday morning in April, 1944, about 9:30, the defendant presented the chcek in question to the prosecutor, as he had other checks issued on other occasions to him by the Signal Mountain Cement Company, in payment of his wages. He made some purchases and was paid in cash the difference between the face of the check and the amount of his purchases. Shortly after the defendant left the store it occurred to the prosecutor that the amount of this check was considerably larger than the customary pay checks for a week's work which he had previously handled for the defendant, and becoming suspicious he at once carried it to the office of the Signal Mountain Cement Company and was advised that the' check had been altered and the amount raised. Returning to his store he met the defendant on the sidewalk and charged him with having passed on him this raised check. The facts thus far stated are uncontradicted. There is a conflict as to just what passed between the parties at this point and to what extent, if any, defendant there and

then admitted responsibilnty for the raising of the check. However, there is no dispute about the fact that this check was presented to the prosecutor by the defendant on that morning and that the prosecutor paid him in goods and cash the face value of the check. Nor is there any doubt upon the record of the fact, as testified by an official of the company, that this check had been raised when shown to him by the prosecutor a few minutes after the prosecutor had cashed it.

The defendant, not denying that he presented this check to the prosecutor, as above stated, and received goods and cash thereon in the amount of its face, denied only that he had raised the check. The claim made in his behalf, without testimony to support it, appears to be that the check was raised after he passed it to the prosecutor; that he had nothing to do with the alteration of the check and knew nothing about it. The figures on the face of the check are typed on a machine adapted to this purpose and the figures are complicated, showing total wages' earned with tax and other deductions.

The case apparently narrows to the determinative issue of fact whether or not this check was presented to the prosecutor in its present concededly altered and raised form or amount, or was raised and altered after the prosecutor received it. The jury by its verdict, approved by the trial judge, found this issue of fact against the defendant, and we find no preponderance of evidence against this finding.

In the first place, it is a well settled rule that the credibility of the witnesses is a matter for the jury. In the second place, undisputed circumstances appear to sustain the contention of the prosecutor that he found himself in possession of this check in its altered and raised condition. It is apparent that but a few minutes

elapsed from the time when the defendant admits that he passed the check to the prosecutor, before the prosecutor hurried to the office of the Signal Mountain Cement Company, in evidence apprehension and alarm. Also, his prompt challenge of the defendant and his perhaps too aggressive efforts to recover the amount advanced by him on the check, is inconsistent with the theory that he himself had altered the figures. It is hardly conceivable that this man could in this short a time, forty-five minutes according to the defendant, have made these changes in this instrument, visited the offices of the drawer of the check and worked himself up into the state of fierce resentment and aggression which the record shows. We think the jury was clearly justified in finding that the defendant passed this check in its altered form upon the prosecutor on this occasion. Moreover, E. E. Smith, for sixteen years chief of the homicide squad of the Chattanooga police department, whose character is in no way impeached, testified that the defendant, freely and promptly upon his arrest on the same morning, told him that he altered the check on the machine at the office of the Company.

Conceding that the evidence does not clearly show that the defendant forged this check, as charged in the first count, relating the verdict to the second count there can be no doubt of defendant's guilt. While he says he did not make the alterations, he makes no explanation of his possession of it. In this situation a conclusive presumption of guilt applies.

Under the general heading "forgery," subhead "presumptions as to making, altering or uttering," in support of the rule that "possession of a forged paper by accused, with a claim of title thereunder, if unexplained, raises a conclusive presumption that he forged it,

or procured it to be forged," 26 C. J., at page 961, cites numerous cases from other jurisdictions and none to the contrary. See, also, 37 C. J. S., Forgery, sec. 80. In our case of *Ratliff* v. *State,* 175 Tenn. 172, 176, 177, 133 S. W. (2d) 470, 472, this rule was referred to and discussed. It was not disapproved but was distinguished with respect to its application to the facts of that case, the court saying, "In the instant case, however, the check was not drawn in favor of the accused, and he did not claim to be the owner or beneficiary thereof, but stated to the cashier that 'a boy outside gave me the check.'" In the case now before us, the check was drawn payable to McGhee, who claimed title to it and to be the beneficiary of it, and he offered no explanation as to his acquisition of it. It may be added that on reason and principle this rule of presumption against the drawer of a forged check, in possession and claiming title thereto, is by analogy supported by our holdings that unexplained possession of stolen property raises a presumption against the accused.

We have referred to the positive testimony of the prosecutor as to admissions promptly made by the defendant when accosted by the prosecutor and charged with this offense. The prosecutor testifies with circumstantial detail that the defendant at once agreed to return to him the money illegally obtained, going first into the store with him and then inviting him upstairs to his living quarters for this purpose. As to practically all of what occurred in this connection there is some controversy and dispute, but we are inclined to the view that much of what the prosecutor testifies in this connection is substantially true. At no time, so far as the record shows, did this young man claim that the check in the hands of the prosecutor was not in the identical form and

amount it was in less than an hour before when he passed it to the prosecutor.

■ We have referred to the testimony of officer Smith, to the effect that the defendant when interviewed by him at the jail, following his arrest, admitted his guilt. The admission of this testimony is made the ground of vigorous attack by counsel for the defendant, who cite the case of *McNabb* v. *United States,* 318 U. S. 332, 63 S. Ct. 608, 87 L. Ed. 819, and seek to rely upon the rule therein laid down touching the admissibility of testimony of confession made by a defendant before a preliminary trial and commitment. Suffice it to say that in the case of *Wynn* v. *State,* 181 Tenn. 325, 181 S. W. (2d) 332, this Court has called attention to the distinction based upon our state statutes, and definitely held that the rule announced in the McNabb case is without application in this state. Moreover, it may be added that in our view of this record the testimony of witness Smith could be disregarded altogether without affecting the result.

■ Touching briefly upon the errors assigned upon the refusal of the trial Judge to grant a new trial, we think it quite apparent that his action was justified. The substance of most of the affidavits consisted of attacks upon the character of the prosecutor in an apparent effort to impeach his testimony. It is well settled that a new trial will not be granted for the introduction of proof for this purpose. One or two of the affidavits purport to offer testimony as to some of the details of what transpired when the prosecutor met the defendant at or about his store and charged him with the offense, which was followed by the difficulty and the shooting of the prosecutor by the defendant on the upper front of the store building.

█ We find nothing in any of the affidavits which in our opinion would change the result of this trial in view of what we have hereinbefore stated as to what are the determinative questions presented.

We find no reversible error and the judgment is affirmed.