STATE, Respondent *v*. PHILLIPS, Appellant

No. 9260.

Argued June 1, 1953. Decided October 6, 1953.

Dissenting Opinions October 23, 1953.

As Amended on Denial of Rehearings December 29, 1953
and January 8, 1954.

264 Pac. (2d) 1009.

Mr. Justices Freebourn and Anderson dissented.

Lloyd J. Skedd, Ralph J. Anderson, Helena, for appellant. Arnold H. Olsen, Atty. Gen., Vera Jean Heckathorn, Asst. Atty. Gen., William H. Coldiron, Sp. Asst. Atty. Gen., Michael G. Chilton, Co. Atty., Helena, for respondent.

Mr. Skedd, Mr. Anderson and Mr. Coldiron argued orally.

MR. JUSTICE ANGSTMAN:

Defendant was convicted of the crime of forgery. His motion for new trial was denied and he has appealed from the judgment and from the order denying a new trial.

The information charged that defendant uttered, published and passed as true and genuine a state warrant for gasoline tax refund, made out to and indorsed "Paul Karst," knowing the indorsement of the said "Paul Karst" to be false and forged. Defendant questions the sufficiency of the information.

The statute charged to have been violated is R. C. M. 1947, sec. 94-2001, reading: "Every person who, with intent to defraud another, falsely makes, alters, forges, or counterfeits any charter, letters patent, deed, lease, indenture, writing obligatory, will, testament, codicil, annuity, covenant, bankbill or note, postnote, check, draft, bill of exchange, contract, promissory note, due bill for the payment of money, receipt for money or property,

passage-ticket, power-of-attorney, or any certificate of any share, right, or interest in the stock of any corporation or association, or any auditor's warrant for the payment of money at the treasury, county order or warrant, or request for the payment of money or the delivery of goods or chattels of any kind, or for the delivery of any instrument in writing or acquittance, release or receipt for money or goods, or any acquittance, release, or discharge for any debt, account, suit, action, demand, or other thing, real or personal, or any transfer or assurance of money, certificate of shares of stock, goods, chattels, or other property whatever, or any letter-of-attorney, or other power to receive money, or to receive or transfer certificates of shares of stock or annuities, or to let, lease, dispose of, alien or convey any goods, chattels, lands or tenements, or other estate, real or personal, or any acceptance or indorsement of any bill of exchange, promissory note, draft, order, or assignment of any bond, writing obligatory, or promissory note for money or other property, or counterfeits or forges the seal or handwriting of another on any official certificate or utters, publishes, or passes or attempts to pass as true and genuine any of the above-named false, altered, forged, or counterfeited matters as above specified and described, knowing the same to be false, altered, forged, or counterfeited, with intent to prejudice, damage, or defraud any person, or who, with intent to defraud, alters, corrupts, or falsifies any record of any will, codicil, conveyance, or other instrument, the record of which is by law evidence, or any record of any judgment of any court, or the return of any officer to any process of any court, is guilty of forgery.''

It will be noted that the first part of the statute names many different documents that may be forged but when the statute speaks of indorsements it names only a part of the instruments and omits auditors' warrants, and hence, defendant contends that the statute when treating of the passing of an instrument containing a false indorsement does not cover the passing or uttering of an auditor's warrant containing a false and forged indorsement.

Defendant's contention in this respect cannot be sustained. ▮ The statute, so far as it prohibits the passing of instruments containing forged indorsements, covers among other instruments "orders." The indorsement of the warrant in question here amounted to the indorsement of an order within the meaning of the statute. State v. Barkuloo, 18 Wash. 52, 50 Pac. 577; State v. Woods, 112 La. 617, 36 So. 626; Board of Shawnee County Com'rs v. Carter, 2 Kan. 115; Protest of St. Louis-San Francisco Ry. Co., 157 Okl. 131, 11 Pac. (2d) 189; People v. Jones, 12 Cal. App. 129, 106 Pac. 724.

Defendant likewise contends that the warrant is non-negotiable ▮ and therefore its indorsement cannot be forgery because it does not affect legal rights. But the statute expressly treats of non-negotiable instruments as well as negotiable instruments. It names promissory notes for property and the assignment of any bond, neither of which are negotiable instruments. R. C. M. 1947, sec. 55-201. The fact, if such it be, that the warrant in question is non-negotiable does not affect the question before us as to whether one who passes it when containing a known forged indorsement is guilty of forgery. Exparte Solway, 82 Mont. 89, 265 Pac. 21.

It is likewise contended that the indorsement affects no legal ▮ rights and therefore cannot amount to forgery. It is not necessary, however, that the forged instrument should create civil liability before it can be held to be forgery. People v. Brown, 101 Cal. App. (2d) 740, 226 Pac. (2d) 647; State v. Longo, 132 N. J. L. 515, 41 A. (2d) 317; Milton v. United States, 71 App. D. C. 394, 110 F. (2d) 556.

The next contention of defendant is that there is not sufficient evidence to corroborate that of accomplices to warrant a conviction.

The story revealed by the accomplice Tomlinson was this: Tomlinson, an employee of defendant at his bar in Helena, went to Three Forks and there rented a post office box numbered 310 under the name of Paul Karst pursuant to a plan of operation proposed by defendant for "making a little extra money, good

money;" in accordance with the plan of operations Tomlinson procured some invoice books and placed them in a locked drawer at defendant's place of business; Tomlinson said the plan was to "run phony claims through;" defendant gave him the invoices later and the witness prepared a false claim for gasoline tax refund in the sum of $319.50 in the name of Paul Karst and sent it through the mail to the state board of equalization; a warrant was issued in payment of the claim and mailed to Paul Karst, Box 310, Three Forks; the warrant was picked up by Tomlinson from post office box 310 at Three Forks; Tomlinson showed it to defendant at his place of business in Helena; defendant asked Tomlinson to indorse the name of Paul Karst on the warrant but he refused to do so and defendant then said in substance, get Buster Lake to sign it; Tomlinson did not know Buster Lake so defendant asked Joe LaValley to call Buster Lake to the bar and to tell him that Tomlinson would buy him a drink; this was done and Lake agreed to and did indorse the name of Paul Karst on the warrant; Tomlinson handed the warrant to defendant the next day and defendant put it in his pocket. Defendant presented the warrant to the Montana Power Company in payment of his bills receiving the difference of $39 in cash.

Defendant relies upon R. C. M. 1947, sec. 94-7220, reading: "A conviction cannot be had on the testimony of an accomplice, unless he is corroborated by other evidence, which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense; and the corroboration is not sufficient, if it merely shows the commission of the offense, or the circumstances thereof."

In State v. Cobb, 76 Mont. 89, 245 Pac. 265, 266, the court enumerated the rules deducible from prior decisions as to what evidence is necessary to corroborate that of an accomplice as follows:

"(a) The corroborating evidence may be supplied by the defendant or his witnesses.

"(b) It need not be direct evidence—it may be circumstantial.

"(c) It need not extend to every fact to which the accomplice testifies.

"(d) It need not be sufficient to justify a conviction or to establish a *prima facie* case of guilt.

"(e) It need not be sufficient to connect the defendant with the commission of the crime; it is sufficient if it *tends* to do so.

"(f) Whether the corroborating evidence tends to connect the defendant with the commission of the offense is a question of law, but the weight of the evidence—its efficacy to fortify the testimony of the accomplice and render his story trustworthy —is a matter for the consideration of the jury."

In considering the sufficiency of corroboration the evidence offered by defendant himself may be considered. State v. Bolton, 65 Mont. 74, 212 Pac. 504; State v. Jones, 95 Mont. 317, 26 Pac. (2d) 341; State v. Yegen, 86 Mont. 251, 283 Pac. 210; State v. Cobb, 76 Mont. 89, 245 Pac. 265.

Defendant admitted that he uttered and passed the state warrant in question and received the $39 in change.

On the question of how the warrant came to be indorsed and defendant's knowledge thereof, Tomlinson's explanation is cor-roborated by the witness Joe LaValley who testified that he goes into defendant's bar quite frequently; that he was there on November 29, 1950, and saw George LaFontaine and Buster Lake there at that time; that he was talking with Buster Lake and George LaFontaine came in and said, "you guys want a drink," and they stepped up to the bar and had a drink on George LaFontaine. Defendant was present tending bar on this occasion. Also Tomlinson was present. The witness LaValley testified:

"Q. Did John Phillips call you over to the bar when you were in there the 29th day of November, 1950? A. Yes.

"Q. What did he ask you to do, if anything? A. He told me to call Lake over. He said, 'He will buy him a drink.'

"Q. Who was the man supposed to buy him a drink? A. That was Ted.

"Q. Tomlinson? A. Yes.

"Q. Did you summon Buster Lake, for him to come over where Ted Tomlinson was at the bar? A. I said, I just called him, I said, 'Lake, there is a drink here for you.'

"Q. On this occasion did Mr. Tomlinson buy you a drink? A. Yes, he bought me a drink.

"Q. Do you know whether he bought Lake a drink? A. Yes, he bought a drink for him too."

George LaFontaine testified that he purchased a drink for Lake and LaValley on the evening of November 29, 1950, at defendant's place of business and that Tomlinson was there at that time.

Lake testified that he was in the Blue Moon Bar operated by defendant in the evening of November 29, 1950. Defendant was tending bar at the time. Tomlinson was also present. He was not then acquainted with Tomlinson but met him at the bar and Tomlinson bought him a drink which was served by defendant. He corroborated the testimony given by Tomlinson as to the circumstances under which he indorsed the name of Paul Karst on the warrant.

As above noted the corroboration of an accomplice need not ▮ connect defendant with the commission of the crime charged in order to be sufficient to sustain a conviction. It is sufficient if it tends to do so. The foregoing evidence given by LaValley and Lake so dovetails into that given by Tomlinson as to the circumstances under which the indorsement of the fictitious name Paul Karst was procured as to constitute corroboration tending to connect defendant with knowledge of the indorsement sufficient to make the question one for the jury, particularly when considered in the light of the fact that defendant had possession of the warrant and uttered it in payment of his bills, and considering the weakness of his testimony designed to show that his possession and passing of the warrant were consistent with innocence.

Defendant on direct examination testified:

"Q. State when, if at all, you first saw this warrant marked Plaintiff's Exhibit No. 9? A. First time I saw this warrant, I

won't say exactly the time, but in my own mind it was November 30 in my cash register down there at noon, when I came down to go to bank to get change and relieve the bartender.

"Q. What did you do with that warrant then? A. I take the warrant, I had to pay some bills, I endorsed it and went to the Montana Power and paid my bills and brought the change back and put it in the cash register for us to work with."

On cross examination he said: "I remember taking warrant out but I don't remember exactly hour and date naturally." He further said: "I must have took it out and endorsed it; otherwise how would it get endorsed?" Asked on cross examination whether he closed up his place of business on the night of November 29, 1950, he said: "Yes, I did.

"Q. Was that warrant in the cash register at that time? A. Yes, sir, I endorsed that that night.

"Q. Then you didn't see it for the first time on November 30th as you testified a while ago? A. I didn't testify that a while ago. I go through the cash register, if I close at night and sign all of the checks in the till there and correct my till, and leave everything there until next morning when I go to work, because it don't do any good to put it in my pocket. I just as well leave it there then cash it next morning or next day."

Asked whether the warrant was in the cash register at noon on November 29, 1950, when he relieved the bartender during the noon hour he said: "I couldn't say. I don't know. It couldn't be there at noon; if it was there at noon I would take it and cash it to get the money in so they could work with it. If it was there at all, it was 29th, late at night." He was at this point again asked: "When did you endorse your name on the back of the warrant?" and answered, "29th or 30th." He then testified:

"Q. Which one, do you remember? A. I don't remember, no. If I didn't endorse it 29th, when I checked up till, I endorsed it next morning. * * *

"Q. Now, if Austin Breck was working on the 29th, he would have cashed that warrant, wouldn't he? A. Yes, that's right.

"Q. So the warrant wasn't taken in at your place on the 30th but on the 29th, wasn't it? A. I couldn't say that."

"Possession of a forged instrument by one who utters or seeks ██ to utter it or otherwise to realize on it or profit by it, without a reasonable explanation of how the possessor acquired it, warrants an inference that the possessor himself committed the forgery or was a guilty accessory to its commission." State v. Earley, 119 Kan. 446, 239 Pac. 981.

. It follows as a matter of course that if defendant either committed the forgery or was an accessory to its commission then he had knowledge of the forgery when he passed the instrument. And "when the evidence shows the name attached to the instrument has been forged, the inference arises that the person who uttered it as genuine either forged the instrument or knew it to be forged". Hatton v. Commonwealth, 294 Ky. 740, 172 S. W. (2d) 564, 565. For other cases supporting the rule see 23 Am. Jur., Forgery, sec. 57, pp. 701, 702, and note in 164 A. L. R. 621; State v. Allen, 53 Idaho 737, 27 Pac. (2d) 482 and McGhee v. State, 183 Tenn. 20, 189 S. W. (2d) 826, 164 A. L. R. 617.

Here defendant's explanation of his possession and uttering ██ the forged instrument was so contradictory and unsatisfactory as to justify a finding that the inference arising from the passing of the warrant that he knew of the forgery, had not been satisfactorily overcome. It is noteworthy that no one working at defendant's place of business who should have been familiar with the facts relative to the manner of gaining possession of the warrant was called as a witness to show that defendant came into possession of the warrant without knowledge of the forged indorsement. One of the bartenders working on November 29th and 30th, Adolphus Salois, was not even called as a witness. Austin Breck, the other bartender on November 29th and 30th, said he did not see the warrant in the cash register. The court was warranted in applying the inference that defendant was implicated in the matter of procuring the forged indorsement or at least knew of it at the time the instrument was passed by him in payment of his obligations and in

holding there was sufficient corroboration of the accomplice's story to tend to connect defendant with the commission of the offense charged and to make the question of its weight one for the jury.

Defendant contends that the witness Lake was an accomplice and that evidence given by him cannot be considered in determining whether the requirements of R. C. M. 1947, sec. 94-7220, have been met.

We do not agree with that contention. The crime of uttering an instrument known to contain a forged indorsement is a crime, separate and distinct from that of forging the indorsement. State v. Williams, 152 Mo. 115, 53 S. W. 424; State v. Blodgett, 143 Iowa 578, 121 N. W. 685; Ball v. State, 48 Ark. 94, 2 S. W. 462; State v. Andrews, 297 Mo. 281, 248 S. W. 967. Wharton's Criminal Procedure, 10th Ed., Vol. 1, sec. 693. pp. 956, 957.

When only one instrument is involved and both the making of the forged indorsement and the uttering of the instrument are by the same person and in the course of the same transaction, they are regarded as acts or steps in the same crime and both acts may be charged in the same information without being duplicitous. Wharton's Criminal Procedure, 10th Ed., Vol. 1, sec. 694, pp. 958, 959; Territory of Montana v. Poulier, 8 Mont. 146, 19 Pac. 594 and State v. Mitton, 37 Mont. 366, 96 Pac. 926, 127 Am. St. Rep. 732.

But the two crimes though both constitute forgery are considered separate and distinct when committed by different persons and where the acts constituting one crime were committed by one person and the acts constituting the other were committed by another.

A person making the forged indorsement with the fraudulent intent is guilty of forgery though he made no attempt to utter or pass the instrument. Ex parte Solway, supra. Likewise one who utters or passes an instrument with a felonious intent knowing it to contain a forged indorsement is guilty of forgery even

though he did not make the forged indorsement. State v. Mittón, supra.

Here it was shown that the making of the forged indorsement was by some one other than the defendant, viz., by Buster Lake.

The circumstances under which he made the indorsement make it questionable whether Lake had any intention to defraud anyone so as to be guilty of either type of forgery under the statute, but certainly he was not implicated in the matter of passing or uttering the instrument.

Lake, so far as the record disclosed, was not present when the ▮ instrument was uttered or passed, did not aid or abet its passing, did not consent to its passing and did not procure it to be done or know anything about its passing. Under the evidence here Lake was not an accomplice in the commission of the offense of passing the warrant in question. He could not have been prosecuted for the crime of uttering or passing the warrant under R. C. M. 1947, sec. 94-204.

The relation between the forger and one passing the instrument knowing it to contain a forged indorsement is analogous to that between a thief and one receiving the property knowing it to have been stolen. It has been held that one who steals property is not an accomplice of one who receives the property knowing it to have been stolen unless the thief and the receiver act in concert in advance of the larceny, because they are separate and distinct crimes. State v. Keithley, 83 Mont. 177, 271 Pac. 449. That same principle governs this case.

Defendant contends that the court erred in permitting the witness Richard Walter (Buster) Lake to testify. The objection to his testimony rests upon the ground that his name was not indorsed on the information until after the jury had been selected and sworn to try the case, and after the opening statement was made to the jury by the county attorney.

R. C. M. 1947, sec. 94-6208, provides: ''The county attorney ▮ must indorse upon the information at the time of filing the same, the names of the witnesses for the state, if known.'' It is not error to allow the indorsement of the names of witnesses

discovered after the filing of the information or to allow witnesses to testify whose names were not indorsed on the information and who were discovered after the information was filed. State v. Harkins, 85 Mont. 585, 281 Pac. 551; State v. Akers, 106 Mont. 43, 74 Pac. (2d) 1138; State v. Gaffney, 106 Mont. 310, 77 Pac. (2d) 398, and cases therein cited. It was shown without dispute that the county attorney did not know of witness Lake when the information was filed. The record shows that two days before the trial began the county attorney filed a petition asking the court for an order directing that Lake be brought from Deer Lodge to the county jail for the purpose of testifying in this case. The order was granted; the trial began on June 16, 1952; the impaneling of the jury was completed on June 18th; on that day, and after the jury had been impaneled, the county attorney made application to indorse the name of Lake on the information as a witness. The record shows that on June 19th written notice was given by the county attorney to defendant and his counsel that Lake was being held in the county jail at Helena where he was available for questioning by defendant and his counsel and offering to agree to any reasonable delay in the trial in order to prepare and secure evidence to meet his testimony; the record shows that the county attorney thought the name of Lake had been indorsed on the information and didn't learn that it had not been so indorsed until after his opening statement had been made to the jury. Lake did not testify until June 20, 1952, and defendant made no request for delay in the trial in order to meet the evidence given by him.

The reason for the statutory requirement that the names of witnesses be indorsed on the information is to safeguard defendant against surprise and unfair advantage. State v. McDonald, 51 Mont. 1, 149 Pac. 279. There was no unfair advantage taken of defendant here. He contends that he should have been afforded the opportunity of examining jurors as to their acquaintance or relationship to the witness Lake. This court, however, has held that it is not error to examine witnesses whose names are not indorsed on the information until after the jury

is impaneled and the trial has commenced. State v. Schnepel, 23 Mont. 523, 59 Pac. 927; State v. Akers, 106 Mont. 43, 74 Pac. (2d) 1138; State v. McDonald, 51 Mont. 1, 149 Pac. 279.

Defendant complains of the reception of evidence of other ▉▉▉ crimes. Evidence of other crimes in which defendant was implicated was a part of the evidence going to make the crime charged against him. In other words, the forgery by Lake or someone else had to be shown in order to show that the instrument passed by defendant contained a forged indorsement known by defendant to be a forgery. The presentation of fraudulent claims to the state and the renting of a post office box in Three Forks, were all part of the operations employed to defraud the state of its money and were circumstances showing defendant's knowledge of the forged indorsement.

The general rule applicable here is stated in 20 Am. Jur., Evidence, sec. 314, pp. 296, 297, as follows: ''Where one crime is committed to prepare the way for another and the commission of the second crime is made to depend upon the perpetration of the first, the two become connected and related transactions, and proof of the commission of the first offense becomes relevant to show the motive for the perpetration of the second. It is competent to show that the crime charged consisted of several stages or continuous acts, all constituting one transaction.''

In 22 C. J. S., Criminal Law, sec. 691, page 1138, it is said: ▉▉▉ ''transactions which are so related to, and connected with, the forgery charged as to be otherwise admissible are not inadmissible because they tend to prove a wholly dissimilar crime, particularly where they constitute part of a connected or continuous transaction on the part of accused.''

This court has held that the history of the transaction may be shown to establish defendant's knowledge of the forgery. State v. Mitton, 37 Mont. 366, 96 Pac. 926, 127 Am. St. Rep. 732. This conclusion is not at variance with the holding in State v. Hale, 126 Mont., 326, 249 Pac. (2d) 495, as contended by defendant for here there was no proof of other crimes committed by defendant as in the Hale case. To make this case comparable to that there

would have to be evidence that defendant passed warrants other than the one in question here knowing them to contain forged indorsements. There was no such evidence here.

·The fact that evidence of other crimes comes from the mouth of an accomplice is no objection to its admissibility. If the jury places the stamp of trustworthiness on the testimony of the accomplice, then all of his testimony may properly be considered, even though some of it is not corroborated. The fact that proof of other offenses showing defendant's knowledge of the forged indorsement is prejudicial to defendant is no reason why it should be excluded.

Defendant complains of an instruction given by the court on the subject of reasonable doubt. The instruction complained of is verbatim with the first three paragraphs of the instruction under consideration, and held not prejudicial, in State v. Wong Sun, 114 Mont. 185, 133 Pac. (2d) 761. It was approved in the early case of Territory of Montana v. McAndrews, 3 Mont. 158, and in State v. Zorn, 99 Mont. 63, 41 Pac. (2d) 513.

Finding no reversible error in the record, the judgment is affirmed.

MR. CHIEF JUSTICE ADAIR, and MR. JUSTICE BOTTOMLY, concur.

MR. JUSTICE FREEBOURN: (dissenting).

Defendant was convicted of the crime of forgery by passing a state warrant for gasoline tax refund upon which the name "Paul Karst" had been unlawfully placed and signed.

From the record it appears that the placing and signing of the name "Paul Karst" upon such warrant were brought about by two witnesses, Tomlinson and Lake.

It is defendant's contention that Tomlinson and Lake are accomplices, upon whose tesitmony the conviction of defendant rests, and that, under R. C. M. 1947, sec. 94-7220, such conviction cannot stand. R. C. M. 1947, sec. 94-7220, provides: "A convic-

tion cannot be had on the testimony of an accomplice, unless he is corroborated by other evidence, which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense; and the corroboration is not sufficient, if it merely shows the commission of the offense, or the circumstances thereof."

The above quoted statute makes it imperative that corroboration of the testimony of an accomplice is an essential prerequisite to the conviction of a defendant where the crime charged rests primarily and solely upon the testimony of an accomplice, and this court has no control over the subject except to apply the statute. This court has no discretion in the matter but is bound to apply the statute indiscriminately to all cases wherever an accomplice appears as a witness, and the state's case depends solely upon his uncorroborated testimony. State v. Keckonen, 107 Mont. 253, 84 Pac. (2d) 341; People v. Robbins, 171 Cal. 466, 154 Pac. 317.

That Tomlinson and Lake were "concerned in the commission of" the crime charged, which brought about the cashing of the false warrant, is beyond question. They caused the name of "Paul Karst" to be placed and signed upon such warrant, without which name the warrant was uncashable. They were, therefore, principals in the forgery and could have been informed against for the same offense of which defendant was accused.

"All persons concerned in the commission of a crime, whether it be a felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission, * * * are principals in any crime so committed." R. C. M. 1947, sec. 94-204.

Tested by the rule laid down by this court, Tomlinson and Lake are accomplices. The general test to determine whether a witness is or is not an accomplice is: Could he himself have been informed against for the offense, either as principal or accessory? If he could, then he is an accomplice. State v. Keithley, 83 Mont. 177, 271 Pac. 449.

And, "The general rule is that the testimony of one accomplice cannot be accepted as sufficient corroboration of the testimony of another; and hence, there can be no conviction on the testimony of accomplices alone, no matter how many there may be, if their testimony is not corroborated by evidence apart from accomplice testimony." 22 C. J. S., Criminal Law, sec. 812, p. 1408.

A reading of the record shows no corroborating evidence sufficient, as required by section 94-7220, supra, to justify the conviction of the defendant upon the testimony of the accomplices, Tomlinson and Lake. There is no corroborating evidence which tends even to show "the commission of the offense, or circumstances thereof," and if it did it would be insufficient. See sec. 94-7220, supra.

In State v. Geddes, 22 Mont. 68, 55 Pac. 919, 924, this court said: "Whatever difference of opinion formerly existed as to what particular facts should be corroborated, and the extent of the corroboration required, where convictions were asked for upon an accomplice's testimony, it is settled in this state, by the statute quoted, [sec. 2089, Penal Code of 1895, now R. C. M. 1947, sec. 94-7220, supra] that the corroboration must be evidence from an independent source, and it must be such that this independent evidence, in itself, without considering the testimony of the accomplice at all, tends to connect the defendant with the commission of the crime charged. Furthermore, it is not a satisfaction of the statute to corroborate an accomplice upon immaterial matters, or to prove merely that the crime charged has been committed, or the circumstances under which it has been committed; for there may be all such proof, and yet the additional essential evidence be lacking, which, independently of the evidence of the accomplice, leads to the inference that the defendant is connected in a criminal way with the commission of the crime. The statute is conformable to the rule laid down by Rosc. Cr. Ev. p. 122. 'That there should be some fact deposed to, independently altogether of the evidence of the accomplice, which taken by itself leads to the inference, not only that a crime

has been committed, but that the prisoner is implicated in it.' "
This court, in State v. Lawson, 44 Mont. 488, 120 Pac. 808, and
in State v. Keckonen, 107 Mont. 253, 84 Pac. (2d) 341, has
followed this same rule.

The fact that the testimony shows that the defendant in the
ordinary course of business found the warrant in his cash register
and openly took it to the Montana Power Company to pay a
bill owing, is not the corroboration which the law requires before
the testimony of the accomplices can be considered. It tends in
no way to connect the defendant with the commission of the
offense of forgery. It does not even show the commission of the
offense or the circumstances thereof. And if it did it would be
insufficient for "the corroboration is not sufficient, if it merely
shows the commission of the offense, or the circumstances there-
of." R. C. M. 1947, sec. 94-7220, supra.

If the majority opinion is allowed to stand then any business
man, no matter how honest, who unwittingly cashes a forged
check or warrant, may be charged, tried and convicted, and sent
to the state penitentiary.

The cause should be dismissed for the reason that the evidence
is insufficient to sustain a conviction.

MR. JUSTICE ANDERSON: (dissenting).

The concern of this court, sitting as a court of last resort, is
not with the guilt or the innocence of the accused for that is the
concern of the jury. Our concern is to determine whether the
defendant had a fair trial without being prejudiced by violations
of the rules which have been promulgated to safeguard every
person from improper and malicious prosecution. If we find
that the rules have been transcended, then it is our duty to
send the cause back to the district court for further action or to
otherwise direct a disposition of it.

The defendant was charged with and convicted of forgery. The
facts dealing solely with the crime with which defendant was
convicted are predicated upon the testimony of Theodore L.
Tomlinson and Richard W. Lake. Without the testimony of

these two witnesses no case was made out against the defendant, if one was in fact made out at all. The testimony of other witnesses merely completes the overall story, i. e., the manner in which the warrant was processed by the State of Montana and the manner in and the circumstances under which the warrant was cashed by the defendant. No substance is added to the case by this evidence in that anyone, in the usual course of his business, may have similarly cashed a state warrant whether it had been forged or genuine.

There is some testimony in the record by one LaValley to the effect that he was in the Blue Moon Bar at the time the alleged forged endorsement took place but he remembered little and as to any conversation between the defendant, Tomlinson, and Lake, the admitted forger, he remembers nothing. There is some testimony by one LaFontaine that adds nothing to the story of the other witnesses.

Theodore L. Tomlinson testified, in effect, that he, the defendant and others entered into a nefarious scheme to defraud the State of Montana out of gas refund tax money. Tomlinson said he was an employee of the defendant; that a method was devised whereby he, Tomlinson, was to make out fictitious invoices and claims and procure a post office box by the use of a fictitious name and that there was a conversation with defendant about notary seals and such other things as were necessary to accomplish the ends sought by the scheme, i. e., to get the State of Montana to issue a state warrant in favor of the fictitious claimant. Tomlinson testified that he procured a post office box in Three Forks, Montana, in the name of Paul Karst; that he signed the name Paul Karst on the application for refund of gasoline tax. He further testified that he and one Robert Chamberlain (who was not a witness in this cause) made out the necessary applications for the tax refund for gasoline all of which he testified was done at the defendant's auto court and impliedly with defendant's knowledge. There was absolutely no corroboration of the above story of Tomlinson and under our system of criminal jurisprudence the only possible effect of it

was to create prejudice against the defendant in the minds of the jury. He, Tomlinson, then testified that he picked up the warrant, which is the subject of the crime here involved, at Three Forks, Montana, brought it to Helena and on November 29, 1950, showed it to the defendant at his place of business, the Blue Moon Bar, in Helena, Montana.

Tomlinson then testified that the defendant asked him to endorse the warrant which he refused to do. Thereupon defendant directed Tomlinson to get Richard W. Lake to endorse the warrant by signing the name Paul Karst, which Tomlinson said was done at the direction of and with the knowledge of the defendant. Tomlinson then said he gave the check to the defendant. The defendant admits that he endorsed the warrant and it was given to the Montana Power Company in payment of bills.

The crime with which the defendant is charged is that of uttering a warrant, knowing at the time that the endorsement on the warrant was forged presumably by Lake. It was unnecessary and prejudicial to show that the warrant was illegally obtained by Tomlinson to prove that the endorsement was forged. The same offense could have been charged, and equally proven, even if the warrant had been genuine.

I agree with JUSTICE ANGSTMAN where it is said in the majority opinion: ''Transactions which are so related to, and connected with, the forgery charged as to be otherwise admissible are not inadmissible because they tend to prove a wholly dissimilar crime, particularly where they constitute part of a connected or continuous transaction on the part of accused.'' However, as in the instant case, where it is solely the statement of an accomplice that tends to connect the defendant with the other crimes without any corroboration, circumstantial or otherwise, then it is my judgment that such evidence is improper and should not have been introduced. The accomplice, Tomlinson, said that Robert Chamberlain was a party to the nefarious scheme but no effort was made by the state to bring this man forward for the purposes of shedding further light on the story of Tomlinson.

The defendant took the stand on his own behalf and denied each and every statement of Tomlinson and Lake. The defendant was the only defense witness. Richard Walter Lake corroborated the testimony of Tomlinson as to the signing of the forged endorsement but said nothing regarding the scheme to defraud the state.

I find no corroborative evidence of any kind which was offered to back up the statements of the witness Tomlinson as to the nefarious scheme to defraud the State of Montana and unlike my colleagues I do not think the evidence of the state employees in any way corroborates Tomlinson's story in so far as the defrauding scheme is concerned. If such were true any person who committed the crime of forgery or any other crime, could involve innocent persons and a conviction could be had by merely bringing into court for corroborative purposes those persons who could show that the document was a forgery or that a crime was committed without any showing as to what connection the ac· cused may have with its commission other than the words of the admitted perpetrator.

The general rule is that evidence of the commission of other crimes is inadmissible. State v. Ebel, 92 Mont. 413, 15 Pac. (2d) 233. The reason for the rule is that such evidence tends to draw the minds of the jurors from the real point on which their verdict is sought, and to excite prejudice and mislead them.

Even if the facts of the case bring the proof of other crimes within one of the exceptions to the general rule that evidence is not admissible, the courts generally require that evidence of the accused's guilt of another crime shall not be admitted unless the proof of the other crime is clear and sufficient to authorize a finding of the defendant's guilt of such other crime. 20 Am. Jur., Evidence, sec. 318, p. 299; Annotation, 3 A. L. R. 784.

If what Tomlinson said about the defendant was true, the defendant was implicated in several crimes other than the one with which he was charged here, both state crimes and federal crimes, but it is so obvious that there was insufficient evidence to even suggest the guilt of the accused as to the other crimes

that comment seems unnecessary, that is, if the rule against uncorroborative evidence means anything at all.

This court said in State v. Sauter, 125 Mont. 109, 232 Pac. (2d) 731, 734, and in effect reaffirmed the language in a later case, State v. Searle, 125 Mont. 467, 239 Pac. (2d) 995: ''Proof that accused committed other crimes, even if they were of like nature to that charged, is not admissible to show his depravity or criminal propensities, or the resultant likelihood of his committing the offense charged; nor may such evidence be offered if it only tends to create a prejudice against accused in the minds of the jury.''

The most that could be said of the testimony of Tomlinson in connection with what happened prior to the time that Lake endorsed the state warrant, wherein he linked the defendant with other crimes, is that it would create prejudice against the accused and prove no crime at all.

If the state had a case against the defendant which it may well have it was unnecessary to put in prejudicial testimony regarding other offenses to prove it, and the cause should be reversed on this ground alone, especially when no evidence tending to connect the defendant with the alleged other crimes was introduced save the accusing nod of Tomlinson an accomplice.

If this court condones the practice used by the state in this case then we are recommending such practice for the use of county attorneys in future cases. Such practice admits of too many uncertainties to be allowed and is dangerous to say the least.

It is my judgment that there is other error in the record but no useful purpose would be served by comment upon it. It is my opinion that the cause should be reversed and a new trial should be ordered.