**STATE of Tennessee, Appellant,**

v.

**Marvin READUS, Defendant–Appellee.**

Court of Criminal Appeals of Tennessee, at Nashville.

Nov. 10, 1988.

Permission to Appeal Denied by Supreme Court Jan. 30, 1989.

Tom Thurman, Asst. Dist. Atty. Gen., Thomas H. Shriver, Dist. Atty. Gen., Albert L. Partee, III, Asst. Atty. Gen., W.J. Michael Cody, Atty. Gen., for appellant.

Patrick T. McNally, Sr. Asst. Public Defender, Jeffrey A. DeVasher, Asst. Public Defender, for defendant-appellee.

## OPINION

WILLIAM S. RUSSELL, Special Judge.

The single issue before the court is the proper interpretation and application of Rule 5(a) of the Tennessee Rules of Criminal Procedure, which rule explicitly requires that an arrested person be taken before a magistrate without unnecessary delay.

This case is before us on a Rule 9 interlocutory appeal granted to the State. We are urged by the State to reverse an order of the trial court suppressing evidence of an electronically recorded confession taken by police officers from the appellee, Marvin Readus, about three to three and a half hours after he had been arrested on a charge of aggravated rape but before he was taken before a magistrate. The learned trial judge, after carefully researching the law, found that neither this court nor the Tennessee Supreme Court has as yet interpreted that language of Rule 5(a) which reads, "Any person arrested * * * shall be taken without unnecessary delay before the nearest appropriate magistrate * * * ", as it may affect the admissibility of a confession taken during the time frame between arrest and appearance before such magistrate. The trial court has triggered appellate guidance by holding the recorded confession taken in this case to be inadmissible. For the reasons hereinafter stated, we reverse the suppression order and remand the case for trial.

The following background facts were either found by the trial judge or appear uncontroverted from the transcript of the evidence introduced upon the suppression hearing. A schoolgirl was waylaid on her way to school, forced into a building on Alameda Street in Nashville, and there raped by an armed man identified to be Marvin Readus by witnesses at the scene. Detective Lucy DiBella testified that she first arrived at the crime scene "as early as 6:45." She is a member of the sex abuse unit of the Metropolitan Nashville Police Department. Other officers proceeded to Readus' mother's residence, where he was staying, and there at about 7:20 a.m. made a warrantless arrest of him. Detective DiBella went with the victim to General Hospital and got the victim checked into a room, this being accomplished by around 8:15 a.m. The officers who had Readus in custody brought him to General Hospital also "for a possible rape kit to be performed on him at that time." This was done at about the same time that the victim was brought to the hospital. Readus was also checked in and assigned a room. Detective DiBella went back and forth between the victim and Readus, first seeing Readus at about 8:30 a.m. She asked him if patrol read him his rights and he said yes. She asked him if he understood them, and if he had anything that he wanted to say. He denied that he had done anything, and offered an alibi. DiBella said "fine" and left the room. Shortly thereafter she re-entered the room where Readus was and he *sua sponte* said to her, "I need some help." She asked him what kind of help, and he responded, "I need to talk about it." She told him that she needed to be sure that he understood his rights and she then read them to him. She testified that he appeared to be in control of his mental faculties, and that he told her that he had completed the eleventh grade in school. The *Miranda* rights waiver form entered into evidence and signed by Readus appears to be technically correct and complete, and the time entered thereon is 9:10 a.m. Detective DiBella further testified:

At that time he stated that he had shot a man, and, and said he had shot him. I asked him when and he had said the night before and then I said did you rape this little girl and he said yes, and I said why did you rape her. He said I don't know, I just did it, and he did make other statements about that that I just made mental notes of. [underlining added]

At that time I told him that a rape kit could be performed on him if he agreed, which again he did sign a waiver for a rape kit to be performed. I explained what that was, a suspect kit, and he— and I told him that we would go to headquarters and at that time we would talk further and tape his statement. That was all I explained to him at that time. [underlining added]

Detective DiBella obtained written permission for the hospital to obtain hair, blood, semen, saliva, etc. samples. This signed consent form shows an execution time of 9:20 a.m. She further testified:

I think then the doctors came in and did their examination and after a period after that then we went to headquarters where a taped statement was taken.

She later in her testimony characterized the taped statement as "concerning the incidents we had discussed at the hospital."

With regard to the relationship between the oral statement made by Readus at the hospital and the taped statement later given at police headquarters, Detective DiBella said on cross-examination:

Q. Okay. Is there anything relevant as far as oral admissions by him relevant to the two charges against him?

A. Everything that was said was then again repeated on the tape that would be relevant. (underlining added)

Q. Okay; so if he [sic] wasn't in there initially it is on the tape?

A. Yes, sir.

The trial court found that the statements were freely and voluntarily given, with full knowledge by Readus of his applicable constitutional rights. The court ruled that the oral confession made at the hospital may be admitted into evidence; but suppressed the taped version of the confession taken at police headquarters, on the ground that

there was an unnecessary delay in violation of Rule 5(a) Tenn.R.Crim.P. in not sooner taking Readus before a magistrate. It was uncontroverted that a magistrate was available. The court found that the delay incident to taking Readus to the hospital was necessary, but apparently found that he should have been taken before a magistrate upon leaving the hospital rather than being taken to police headquarters for the electronic recording of his confession. The oral statement given at the hospital was ruled to be admissible. The recorded statement at police headquarters was found to be freely and voluntarily given after a legally proper waiver of Readus' applicable constitutional rights, but suppressed as evidence because of the perceived unnecessary delay.

■ Apparently Readus left the hospital at about 10 a.m. The taped confession was apparently taken about 11 a.m. Thereafter, the Public Defender's office was called, and an attorney from that office came and conferred with Readus at police headquarters. Subsequently, Readus was taken before a magistrate and the booking procedures were completed at 3:35 p.m. Of course, for the purpose of judging "unnecessary delay" under Rule 5(a), as raised in a suppression motion attacking a confession obtained during the questioned period, it is the time between the arrest and the obtaining of the confession sought to be suppressed that is central to the inquiry.

The legal issue of the exact effect of a violation of Rule 5(a), Tenn.R.Crim.P., has been perceived to be an open question by the trial judge in this case, counsel for both sides, and scholars. See Raybin, *Tenn. Crim.Prac. and Pro.*, § 19.63 (1985).

■ The trial court was obviously influenced by federal court decisions dealing with Rule 5(a) Fed.R.Crim.P. Because of the format similarity between our state rules and the federal rules of criminal procedure, it is natural to assume an intention on the part of our drafters to embrace federal applications and interpretations. The author of this opinion can say with authority that such is not the case, having chaired the Tennessee Supreme Court Commission on Rules of Practice and Procedure in Criminal Cases, which commission produced the Tennessee Rules of Criminal Procedure that were adopted by the Tennessee Supreme Court and then ratified by the Tennessee General Assembly in 1979. Judge Martha Craig Daughtrey of this court and panel was an adjunct member of that commission; and Judge Lyle Reid, now of this court, was also a member. The federal rules format was a useful subject matter structure for use as a guide; and some of the federal rules, such as the statement of purpose found in Rule 2, seemed totally appropriate for Tennessee adoption. The same was true of many of the rules relating to discovery. But often, as is the case with Rule 5, the Tennessee rule was a statement of existing procedures in our courts, set out in an order that would aid understanding and practice. Note that our total Rule 5 varies substantially from the federal rule of the same number.

■ The language mandating the taking of an arrestee before a magistrate without unnecessary delay was not new law, but was a statement of the common law and a restatement of our statute law. The most prevalent ill that its explicit condemnation of unnecessary delay was meant to help prevent was the practice of some officers of making arrests, locking the arrestees in jail without benefit of a mittimus, and often not bothering to take the accused before a magistrate for days. We have always had a statute that addresses this same general subject, to wit: Code 1858, § 5.017; Code 1932, § 11515; T.C.A. § 40–604, now T.C.A. § 40–5–103; and we have had a body of case law to grow out of the application of this statute that gave birth to the "72 hour rule." The statute reads: "No person can be committed to prison for any criminal matter, until examination thereof be first had before some magistrate." The case of *Wynn v. State*, 181 Tenn. 325, 181 S.W.2d 332 (1944) held that a delay of seventy-two hours, without more, did not render a confession taken during that time inadmissible. See also *Van Zandt v. State*, 218 Tenn. 187, 402

S.W.2d 130 (1966); *State ex rel. Reed v. Heer,* 218 Tenn. 338, 403 S.W.2d 310 (1966).

It is appropriate to note that the federal rule, the related federal statute [18 U.S.C. § 3501(c)], and the federal cases dealing with the suppression in federal courts of confessions taken during a time of perceived unnecessary delay, raise no federal constitutional issue that we are required to deal with, in the context of the case at bar.

The memorandum of law filed by the trial judge and the excellent briefs of counsel clearly track the status of the law on this issue. The federal rule [Fed.R.Crim.P. 5(a)] was interpreted by the United States Supreme Court to require that, after arrest, an accused must be brought before a magistrate for an initial appearance hearing "without any unnecessary delay," and that any confession obtained from an accused during a period of "unnecessary delay" must be excluded even though it is otherwise voluntary in the traditional sense. *McNabb v. United States,* 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943); *Mallory v. United States,* 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957). The federal statute, 18 U.S.C. § 3501(c), was passed after their Rule 5(a) was adopted. That statute provides that a delay in bringing an accused before a magistrate will not invalidate a confession, but the delay is considered only as a factor going to the voluntariness of the confession and a *Miranda* waiver. See *United States v. Mayes,* 552 F.2d 729 (6th Cir.1977).

The trial judge in the case at bar concluded that the effect of our 1979 adoption of a Rule 5(a) that he perceived to be an adoption of the federal Rule 5(a), in the absence of a Tennessee statute like 18 U.S. C. § 3501(c), showed a conscious intent to in effect put in place a *McNabb-Mallory* Rule in Tennessee. In the trial court's well written memorandum opinion, he states that "The Tennessee Courts must enforce Rule 5(a) of the Tennessee Rules of Criminal Procedure undiluted by 18 U.S.C. § 3501(c)." We respectfully hold to the contrary. Our Supreme Court, in dealing with our T.C.A. § 40–5–103, has expressly rejected the *McNabb* rule. *Wynn v. State,*

181 Tenn. 325, 181 S.W.2d 332; *McGhee v. State,* 183 Tenn. 20, 189 S.W.2d 826 (1945). Our Rule 5, as is noted in the committee comment, merely stated existing Tennessee law.

Certainly a violation of Rule 5(a) could result in the suppression of a confession, if the violation was a factor in its involuntariness. The better reasoned cases interpreting "unreasonable delay" in this context say that it is one factor to be taken into account in evaluating the voluntariness of a confession; and that if the totality of the surrounding circumstances indicates that a confession was voluntarily given, it shall not be excluded from evidence solely because of delay in carrying the confessor before a magistrate. This is the holding of a very scholarly opinion filed by the Supreme Court of Michigan on September 16, 1988, in the consolidated cases of *People v. Cipriano, People v. Dean* and *People v. Harrison,* 431 Mich. 315, 429 N.W.2d 781 (1988).

In the case at bar the delay can hardly be called unnecessary. The officers investigating a reprehensible ambush rape of a school girl simply made their case as expeditiously as was reasonable, and did not terminate important investigative procedures agreed to by the accused to take the accused before a magistrate. Readus initiated the confession, and there is no evidence that he expressed a desire that it be terminated. We also note that the oral confession admitted by the court was apparently a candid version of the same confession later repeated for recordation and excluded by the trial court.

We hold that there was no violation of Rule 5(a) Tenn.R.Crim.P. that affected the voluntariness of the recorded confession, and that the suppression of same was therefore error.

Remanded for trial.

DAUGHTREY, P.J., and SCOTT, J., concur.