The STATE OF MONTANA, Plaintiff and Respondent, v.
JOE COOPER, a/k/a GERALD ARTHUR MOORE, De-
fendant and Appellant.

No. 10942.

Submitted September 16, 1965. Decided October 14, 1965.

406 P.2d 691.

Hauge, Hauge, Ober & Spangelo, Havre, Waldo N. Spangelo (argued), Havre, for appellant.

Forrest H. Anderson, Atty Gen., Helena, William G. Sternhagen, Asst. Atty Gen. (argued), Helena, Robert D. Morrison (argued), Havre, for respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This appeal is from a judgment entered in the district court

of the Twelfth Judicial District of the State of Montana, in and for the County of Hill, wherein the defendant-appellant, Joe Cooper, a/k/a Gerald Arthur Moore, was found guilty of the crime of forgery upon a jury trial and sentenced to a term of seven years.

The facts are that over a considerable length of time, ending abruptly with his arrest on Monday morning, May 4, 1964, the defendant, along with numerous anonymous other persons, rather vigorously devoted himself to what appears to have been an open-house drinking party in and around the apartment of one Theresa Nicholson in Havre, Montana. The defendant's bibulous comrades evidently financed this revelry by cashing checks from time to time thereby replenishing the ever dwindling supply of wine. Opportunity to donate was realized by the defendant on Monday morning when a check was mysteriously discovered protruding from his shirt pocket. Prodded by stomachs understandably turbulent, a suggestion was raised that the defendant cash the check and purchase breakfast food. The defendant claims he inquired as to the genuine nature of the check and was told by Robert L. White, co-defendant in this case, that the check was good. White later confessed having written the check himself and forging the signature thereon, for which crime he was sentenced to a term of 18 months. The defendant, however, claims that with all innocence he then proceeded across the street to Paulson's Grocery and there signed and cashed the check, receiving in return groceries and cash. The check was made payable to "Joe Cooper," an alias often used by the defendant. He indorsed the check with that name. The name forged on the check by White was "Hershal Fox."

The defendant had temporarily been employed by a resident of Havre named Herschel Fox. At that time, the defendant used his true name—Gerald Arthur Moore. Mr. Fox had paid the defendant for his labor with a check made out to the defendant's true name. Prior to May 4, 1964, the defendant cashed this check, signing thereto his true name.

The statute concerning forgery as charged in Count One of the Information is R.C.M.1947, section 94-2001, which reads in part:

"Every person who, with intent to defraud another, falsely makes * * * any * * * check * * * or utters, publishes, or passes * * * any of the above-named * * * knowing the same to be false * * * with intent to * * * defraud * * * is guilty of forgery."

■ The elements constituting forgery are firmly established in Montana. They are: (1) A false making of an instrument in writing; (2) a fraudulent intent, and; (3) a writing which, if genuine, might apparently be of legal efficacy or the foundation of legal liability. State v. Alexander, 73 Mont. 329, 332, 263 P. 542; Ex parte Solway, 82 Mont. 89, 265 P. 21.

In the Solway Case, supra, this court said at page 94, 265 P. at page 23:

"The essence of the crime of forgery is the fraudulent intent with which the instrument is made or forged, or is uttered, published, or passed, and, as the acts declared to constitute the offense are stated in the statute in the alternative or disjunctive, any one of those acts, committed with the intent to defraud another, constitutes the crime charged; * * *."

■ Therefore, one possessed of fraudulent intent who either writes a forged instrument, *or* who knowingly utters a forged instrument, each act being separate and distinct from the other, or who, of course, commits both acts, is guilty of forgery.

■ "Uttering" a forged instrument consists in offering to another the forged instrument with a knowledge of the falsity of the writing and with intent to defraud. 2 Wharton Crim. Law, 12th Ed., § 648, page 437.

R.C.M.1947, section 94-105 states:

"Whenever, by any of the provisions of this code, an intent to defraud is required in order to constitute any offense, it is sufficient if an intent appears to defraud any person, association, or body politic or corporate, whatsoever."

The effect of this statute renders any requirement of an "intent to defraud" a general intent—as compared to a specific intent.

R.C.M.1947, section 94-118, states:

"The intent or intention is manifested by the circumstances connected with the offense, and the sound mind and discretion of the accused * * *."

In People v. Leach, 168 Cal.App.2d 463, 336 P.2d 573 at 576, in a case involving forgery of numerous documents connected with the purchase of an automobile, that court, discussing intent to defraud generally, said:

"The proof of intention to defraud 'may consist of reasonable inferences drawn from affirmatively established facts.' People v. Brown, 137 Cal.App.2d 138, 143, 289 P.2d 880, 883; People v. Horowitz, 70 Cal. App.2d 675, 687, 161 P.2d 833."

Following this line of thought, we quote from State v. Phillips, 127 Mont. 381, 390, 264 P.2d 1009, 1014, which adopted the following thoughts from other jurisdictions.

" 'Possession of a forged instrument by one who utters * * * (it) without a reasonable explanation of how the possessor acquired it, warrants an inference that the possessor himself committed the forgery or was a guilty accessory to its commission.' State v. Earley, 119 Kan. 446, 239 P. 981.

"* * * And 'when the evidence shows the name attached, to the instrument has been forged, the inference arises that the person who uttered it as genuine either forged the instrument or knew it to be forged.' Hatton v. Commonwealth, 294 Ky. 740, 172 S.W.2d 564, 565."

The defendant argues that at the time he passed the check at Paulson's Grocery, he did not know it was forged or fraudulent, and that he passed it in good faith of its genuineness. Some attempt was made at trial to show that the defendant, due to a limited education and restricted ability to read, was unable to determine that the check was a forgery. This is hardly credible. The defendant knew, worked for and was paid by Herschel Fox. The check for this work made payable

to Cooper in his real name—Gerald Arthur Moore. The defendant cashed this check. The forged paper here in question was made payable to the defendant's alias—Joe Cooper, a name apparently not used by the defendant when he was employed by Mr. Fox.

Furthermore, the defendant testified that he could read the name "Fox" as written on the forged check. He then testified as follows:

"Q. And who gave you this check? A. That's what I'm not for sure.

"Q. You don't know whether White gave you this or not? A. Well, he said, 'let's go cash your check.' I can't say for sure if he gave it to me or not.

"Q. You had no idea where it came from? A. Well, I mean, I knew it came from somebody there, one of the guys, must have been made out or something."

At no time was the real Herschel Fox "one of the guys" present at this regalement.

Although the circumstances surrounding the defendant prior to and at the time of passing this check have been to some extent made known to this court, we are not prepared to take notice of the fact that consumption of unknown quantities of wine over an extended period of time may have so benumbed the defendant's naturally limited mental ability that total comprehension of his acts was an impossibility for him. He was, as shown by his testimony, sufficiently clear-minded at the time to retain some memory of what transpired. The conclusion is inescapable that he was indeed sufficiently conscious at the time to recognize the fraudulent nature of the check and therefore was of adequate mental ability to form an intent to defraud by uttering the check knowing of its fraudulent nature.

Defendant further contends that since the check was post-dated May 5, 1964, and was passed on May 4, 1964, it could not validly be presented for payment prior to maturity, thus causing no other person to be legally liable for its payment.

Thus the defendant was not filled with an intent to defraud since he *could* have redeemed the check before it matured. This argument is utterly without merit.

"* * * in order to constitute forgery it is not necessary that the instrument forged be negotiable [citing cases], but only that, if genuine, it would expose some person to legal process." Ex parte Solway, supra, 82 Mont. p. 96, 265 P. p. 23.

"It is not necessary, however, that the forged instrument should create civil liability before it can be held to be forgery." State v. Phillips, supra, 127 Mont. at 385, 264 P. at 1011.

It is well known that criminal intent or any other mental state required and the criminal act must concur. The criminal act committed by the defendant was the passing of an instrument known to him to be a forgery. The defendant's intent to defraud culminated in the passing of the forged check. At that instant, the three above-mentioned elements of forgery being present, the crime was complete.

Defendant further claims that the lower court erred when it allowed the State to indorse Officer William Hafdahl's name to the information as a witness for the state after trial commenced and four months after the filing of the information.

R.C.M.1947, section 94-6208, requires the county attorney to indorse upon the information at the time of filing "the names of the witnesses for the state, if known." The purpose is to protect the defendant from surprise and unfair advantage and to afford him a fair opportunity to adequately defend himself. In this instance, however, counsel for the defendant was aware of the existence of Hafdahl and of the fact that Hafdahl was a potential witness as yet undiscovered by the state. It would have behooved counsel to have discovered the nature and extent of potential testimony by Hafdahl rather than assuming that he would remain undiscovered. It was not until the day of the trial that Hafdahl was discovered by the county attorney. The defendant's prior knowledge in fact of such a witness washes away the element of surprise and unfair

advantage. The statutory requirement of indorsement of the names of witnesses cannot now be raised as the foundation for prejudicial error. In light of these circumstances, it was not error to permit the name to be indorsed on the information the day of the trial, nor to permit the witness to testify.

Other specifications of error are concerned with the seven-year sentence imposed upon the defendant, who claims this to be excessive. Oral argument before this court revealed several serious circumstances which were properly within the lower court's consideration at the time sentence was imposed. R.C.M.1947, section 94-2004, permits punishment for forgery of from one to fourteen years. It is not for this court to disturb the sound discretion of the trial court's sentence under the circumstances of this case and in light of the information and facts known to the trial judge at the time.

Further, the defendant made no effort to mitigate the sentence, as provided for under R.C.M.1947, sections 94-7813 and 94-7814.

Finally, the defendant points out the difference in the spelling of the name "Hershal," as it appears on the check, and Mr. Fox's real name, which is spelled "Herschel." This variance in the information caused no prejudicial error to the defendant, did not mislead him in any way, and was not a fatal defect. Further, the doctrine of *idem sonans* is applicable in this instance.

For the above reasons, the conviction of forgery is in all parts affirmed.

MR. JUSTICES JOHN CONWAY HARRISON, ADAIR, DOYLE and CASTLES concur.