THE STATE OF MONTANA, PLAINTIFF AND RESPONDENT, *v.*
PAUL MANNING, DEFENDANT AND APPELLANT.

No. 11301.
Submitted May 10, 1967.   Decided June 28, 1967.
429 P.2d 625.

Craig Derry (argued), Billings, for appellant.

Forrest H. Anderson, Atty. Gen., Helena, John L. Adams, Jr., County Atty., Billings, William G. Sternhagen, Asst. Atty. Gen. (argued), Helena, H. F. Hanser, Deputy County Atty., appeared, Billings, for respondent.

MR. JUSTICE DOYLE delivered the Opinion of the Court.

This is an appeal from a jury verdict charging the defendant with two separate counts of second degree assault on two Billings police officers. The jury returned a guilty verdict on both counts. The defendant was sentenced to five years on each count, the two terms to run concurrently. Defendant moved to require the state to elect one of the two counts for sentencing

and also moved for a new trial which was denied by the Honorable C. B. Sande, district judge of Yellowstone County.

The salient facts are all too familiar to the public, news media and law enforcement officials of the nation. The defendant at the time of the crime was 18 years of age, and above average strength.

From the record we gather that there is in Billings an establishment known to the teenage "Go-Go Set" as the Stable. This pleasure emporium is primarily for teenage dances. On the evening of December 4, 1966, the defendant herein, in company with his two cousins Anton and George Degele, were present. However, the three above-named became involved in an argument with Mike Smith who retreated with bruises and contusions.

Three paid attendants of the Stable, best identified as "bouncers," Bob Kelsey, Pete Damjanovich and Harold Brazelton, then attempted to evict the defendant together with the two Degele brothers from the premises, however Anton Degele engaged Bob Kelsey in fisticuffs with the defendant lending aid and assistance to his cousin Anton.

Billings police officers, Curtis Bruce and A. J. Guy, in uniform, in a patrol car were parked near the Stable and Officer Guy placed Anton Degele under arrest and took him to the side of the Stable for the purpose of search.

This arrest precipitated a real brawl with the defendant slugging and cursing anyone who came near him. Officer Bruce informed the defendant he was under arrest. The defendant then slugged the officer. The defendant broke away from Officer Bruce, slugged attendant Dobner and viciously kicked attendant Damjanovich, and again slugged Officer Bruce who clouted the berserk defendant with a flashlight. The defendant was then handcuffed and placed in the police patrol wagon. Both officers testified that the defendant had been drinking.

The defendant and his teenage witnesses told a story that

placed the onus of the brawl on the police officers. Careful scrutiny of the record discloses many variances and discrepancies in their stories, and the jury elected to believe the witnesses for the state, finding the defendant guilty on both counts.

After reading the prior juvenile record of the defendant to the defendant and his counsel in open court and hearing no denial of this record, or any suggestion oral or written to hear further testimony to mitigate or aggravate the proscribed punishment the court imposed the five-year sentence on each count to run concurrently.

From this sentence and conviction the defendant appeals citing five specifications of error which will be disposed of chronologically in this opinion.

Specifications of error I and II involve defendant's offered instructions 5 and 6, dealing with self-defense and read as follows:

"You are instructed that to use, or attempt or offer to use force or violence upon or towards the person of another is not unlawful when committed by the party about to be injured in preventing an offense against his person, if the force or violence used is not more than sufficient to prevent such offense."

"You are instructed that if a person is assaulted in such a way as to induce in him a reasonable belief of danger of losing his life or suffering bodily harm, he is justified in defending himself, even if the danger be not real, only apparent."

Defendant's fifth instruction is a partial synopsis of section 94-605, subd. 3, R.C.M.1947, and defines the time element when the use of force against another is not unlawful. Such force may be used by a party about to be injured or by another in his aid or defense.

Analysis of the record herein convinces any fair minded, prudent person that this young hoodlum and defendant was a vicious aggressor and instigator of the brawl on December 4, 1966, and did commit the assaults.

■ Where, as here, the uniformed police laid aside their personal feelings and their actions were tempered with good judgment, common sense, restraint and understanding in their attempt to do everything within their power to keep the teenagers herein from becoming involved with the law, this court will give slight cognizance to a spurious contention of self-defense or lawful force.

■ The third specification deals with Instruction No. 8 (plaintiff's offered instruction No. 20) which reads:

"Any defendant in a criminal action or proceeding may be allowed to be sworn and testify in his own behalf. In such case the jury in judging the credibility of the witness, and the weight to be given to his or her testimony, may take into consideration the fact that he is the defendant, and the nature and enormity of the crime of which he is accused; *still you have no right to disregard the testimony of the defendant on the ground alone that he is the defendant,* and stands charged with the commission of the crime. *The law presumes each defendant to be innocent until he is proven guilty, and the law allows him to testify in his own behalf, and the jury should carefully and impartially consider his testimony,* together with all the other evidence in the case." (Emphasis supplied.)

Defendant predicates his objection to Instruction No. 8 contending that a different standard is established to judge the defendant's testimony, if he testifies as he did here. We are at loss to determine why the defendant cites State v. De Lea, 36 Mont. 531, 93 P. 814, which is exactly contra to defendant's position. In the De Lea case the defendant argued that the "court ought not to single out a particular witness and direct the attention of the jury to his testimony."

We have no quarrel with the truth of this statement as applied to witnesses in general but we note an exception to the general rule, it being section 94-8803, R.C.M.1947, which reads:

"*When the defendant is not a competent witness and when he may testify.* A defendant in a criminal action or proceeding can-

not be compelled to be a witness against himself; but he may be sworn, and may testify in his own behalf, and the jury in judging of his credibility and the weight to be given to his testimony, may take into consideration the fact that he is the defendant, and the nature and enormity of the crime of which he is accused. If the defendant does not claim the right to be sworn, or does not testify, it must not be used to his prejudice, and the attorney prosecuting must not comment to the court or jury on the same."

This section prescribes the standard by which the jury shall judge the defendant's credibility, hence, as a direct consequence the jury must be advised of that standard. It is the duty of the court to give instructions general in character, except where regulated by statute.

The jury here was adequately instructed as to the defendant's testimony and the court gave every protection to the defendant.

We will not comment on any instruction not offered in the settlement of instructions.

The fourth specification is that the two convictions are in one indivisible transaction, hence, only one punishment can be inflicted under section 94-4701, R.C.M.1947.

However, the two separate counts of assault were charged and proven as to two separate persons. To state it thus is to answer the alleged error. However to attempt to follow the appellant's reasoning, he alleges that since the assaults occurred in one melee or brawl, that even though two separate people were involved, only one crime was committed.

Appellant cites Neal v. State, (1961), 55 Cal.2d 11, 9 Cal. Rptr. 607, 357 P.2d 839. In that case *two* separate counts of attempted murder were approved by the California Court because two separate people were the subjects of attempted murder. However, the method of attempted murder was by throwing a fire bomb which resulted in a fire. A further count of arson was charged and a verdict had. The California Court reversed, not because of two separate counts of attempted murder; but

because the attempted murder and the method thereof were inseparable. This is a completely different situation than we have here; and the Neal case supports our holding. (And see Morigeau v. State, 149 Mont. 85, 423 P.2d 60.

The specification is without merit.

■ The fifth and final specification deals with defendant's contention that the trial court erred in reading into the record in open court defendant's prior record. The appellant asserts this is a prior "criminal" record and alleges that no hearing or opportunity to explain was had. However, a Judge, after verdict, may and should consider prior events of defendant's life as disclosed by his juvenile record. These events are not criminal, being juvenile; and further he had every opportunity to explain as will hereafter become apparent. (See sections 10-601 and 10-611, R.C.M.1947.) This juvenile record discloses that between August of 1963 and December 4, 1966, defendant was arrested twice for not having a driver's license, and once for burglary in Custer, Montana; on March 30, 1964, he was committed to the Industrial School at Miles City but paroled to his mother; a curfew violation on May 15, 1964; placed in juvenile ward on August 9, 1964, and sent to Havre to live with an uncle; on January 7, 1965, he was arrested for defrauding an inn-keeper and sent to Miles City; and later released and apprehended for the crime of assault upon a minister and plead guilty.

The above record preceded the sentence pronounced on defendant January 13, 1967.

Section 94-7831, R.C.M.1947, directs a district trial judge before sentencing a defendant to have a written report by the probation or parole officer and to consider the same.

■ The trial court *after* reading the written record asked if there "was any legal excuse why judgment and sentence of the court should not be pronounced against you?"

If the defendant or his counsel desired to challenge the re-

cited juvenile record, here was the opportunity to do so, yet both stood silent and remained mute.

This case falls far short of the decision and facts in Kuhl v. District Court, 139 Mont. 536, 366 P.2d 347, and Petition of Amor, 143 Mont. 305, 306, 389 P.2d 54.

In State v. Cooper, 146 Mont. 336, 343, 406 P.2d 691, 695, this court, in commenting on the trial court's entertainment of "several serious circumstances which were properly within the lower court's consideration at the time sentence was imposed" stated that it was "not for this court to disturb the sound discretion of the trial court's sentence under the circumstances of this case and in light of the information and facts known to the trial judge at the time."

The judgment is affirmed in all particulars.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR, CASTLES and JOHN CONWAY HARRISON concur.