# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### June 2007 Session

## STATE OF TENNESSEE V. DAVID LANE GOSS

**Direct Appeal from the Criminal Court for Wilson County**
**No. 05-0294   John D. Wootten, Jr., Judge**

---

**No. M2006-01467-CCA-R3-CD** - Filed July 31, 2007

---

The Defendant, David Lane Goss, was convicted by a Wilson County jury of driving under the influence.  On appeal, the Defendant alleges the trial court erred when it: denied his motion to suppress certain oral statements he gave during the traffic stop; denied his motion to dismiss based on his claim that he was not properly taken before a magistrate; and denied his motion for judgment of acquittal.  After a thorough review of the record and relevant law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES and NORMA MCGEE OGLE, JJ., joined.

Michael R. Jennings, Lebanon, Tennessee, for the Appellant, David Lane Goss.

Robert E. Cooper, Jr., Attorney General and Reporter; Mark A. Fulks, Assistant Attorney General; Tom P. Thompson, Jr., District Attorney General; Jerry D. Hunt, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I.  Facts

At the Defendant's trial, the following evidence was presented: Detective[1] Brian Harbaugh testified that he was initially traveling west on Saundersville Road when he noticed a car coming towards him, driving partially in his lane.  Detective Harbaugh continued past the vehicle, turned around, and approached the vehicle from behind.  The detective observed the vehicle cross the

---

[1]At the time of the traffic stop, Detective Harbaugh was a patrol officer.  We will refer to him by his rank at the time of the trial.

double yellow line several times and the far "fault" line once. Detective Harbaugh initiated his emergency lights, but the vehicle did not pull over. Detective Harbaugh radioed dispatch, and Deputy Hobson responded that he was in route. The vehicle drove half a mile further and pulled into a driveway. The Defendant stepped out of the vehicle and gave his license to Detective Harbaugh, who ran a license check. Detective Harbaugh testified that the Defendant's eyes were "glossy and red," he was unsteady, and he "kind of fumbled for his license somewhat."

Detective Harbaugh retrieved his pocket recorder[2] because his patrol car was not equipped with a video camera, and he explained to the Defendant that he would like the Defendant to perform three different field sobriety tests. The Defendant agreed and began the finger counting test, which he was unable to satisfactorily complete. Detective Harbaugh stated that the Defendant could not match the numbers with the fingers and, instead of making three repetitions, he made eight. Next, the Defendant was asked to count backwards from 88 to 68. His response was 88, 88, 88, 88, 85, 84, 83, 82, 81, 80, 79, 78, 76, 77, 76, and he then stopped counting. Finally, the Defendant was asked to stand with one leg six inches off the ground while counting from 1001 to 1010. The Defendant also inadequately performed the third test, first making it to 1002, then to 1004. When questioned, the Defendant was unable to adequately convey his work address. Detective Harbaugh placed the Defendant in custody and took him to jail because he felt the Defendant was intoxicated.

On cross-examination, Detective Harbaugh testified that Deputy Hobson did not observe the Defendant driving. Additionally, he admitted that it may have been only two or three hundred yards from where he activated his emergency lights to the Defendant's driveway. Detective Harbaugh admitted the Defendant was polite and cooperative, but he had a "moderate odor of alcohol" on his breath. Detective Harbaugh did not find any alcohol in the Defendant's vehicle, nor did he find any evidence that alcohol had been consumed. Detective Harbaugh testified that he asked the Defendant a number of times whether he had been drinking, and, each time, the Defendant responded that he had not. Detective Harbaugh also admitted that most people do not practice counting backwards or standing with one leg out. Additionally, he stated he refused to demonstrate the one leg stand a second time because of safety concerns. If someone wanted to engage an officer, during the one leg stand demonstration would be an opportune time because the officer is on one leg with his hands at his side. Detective Harbaugh stated that the Defendant was not free to walk into his house during the stop. Detective Harbaugh testified that he took the Defendant to jail, where he was booked. Detective Harbaugh did not know specifically whether the Defendant was taken before the judicial commissioner at the jail.

The Defendant testified that he left work at 8:00 p.m. on October 4, arriving home at about 8:20 p.m. Soon thereafter, he received a phone call from a man who told him that the baby that his girlfriend, Candace, was carrying was not the Defendant's. The two had been dating for approximately ten years, so this came as difficult news. The Defendant talked on the phone to Candace, the man, and the man's girlfriend. The Defendant then left his house to go to Candace's

---

[2]The tape recording of the stop was played for the jury which, presumably, included all of the Defendant's statements in issue.

house to further discuss the situation because he was "devastated" at the news. After realizing that going to his girlfriend's house was not a good idea because he was in such a foul mood, he turned around and proceeded back home. The Defendant stated that he never saw the police until he arrived back in his driveway. He first noticed the officer when he exited his vehicle, and the officer did not activate his emergency lights until he pulled in behind the Defendant.

The Defendant testified that the officer first asked the Defendant if he was okay, and he then asked if the Defendant had been drinking. The officer returned to his patrol car with the Defendant's license, and, after a short time, he returned and again asked the Defendant if he had been drinking. The Defendant was asked a third time, later in the stop, if he had been drinking, and the Defendant responded that he had consumed twelve to fourteen beers. He testified that he responded this way because he was "a little aggravated." The Defendant testified that he believed he performed the field sobriety tests adequately. The Defendant testified he was then arrested, and he was unable to go to work the next day because he did not see the judge until then. The Defendant stated that he was never allowed to see a judicial commissioner.

On cross-examination, the Defendant stated he became aggravated because the officer was arrogant, he shined his light in the Defendant's face, and he asked more than four times whether the Defendant had been drinking. The Defendant stated he sounded different on the tape because he had been crying that night. He did not tell the officer about his troubles because he believed the officer would not have cared. The Defendant further stated that the officer did not see him cross any yellow lines because the officer was not there.

Based on this evidence, the Defendant was convicted of driving under the influence.

## II. Analysis

On appeal, the Defendant argues his conviction should be overturned due to (1) the trial court's error in not granting his motion to suppress, (2) the trial court's error in not granting his motion to dismiss, and (3) the insufficiency of the evidence.

### A. Motion to Suppress

The Defendant's first claim is that the trial court erred in denying his motion to suppress statements given at the traffic stop. The Defendant bases his motion to suppress on the fact that the Defendant was not given *Miranda* warnings at any time during the stop. The Defendant alleges that, at some point prior to his being asked whether he had been drinking a third time, he was constitutionally "in custody," and, thus, any statements after that point in time should have been excluded.

The *Miranda* requirements must be met when one is interrogated while in custody. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966) ("[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it

demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."); *accord Rhode Island v. Innis*, 446 U.S. 291 (1980). Here, there is no dispute that the *Miranda* warnings were not given during the stop and that the Defendant was interrogated. Thus, the only issue is whether the Defendant was "in custody" when he was questioned at the traffic stop.

The answer to this inquiry is fact specific and is generally not subject to bright line rules. Initially we ask, was "the defendant [ ] placed under formal arrest or [ ] otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444 (quotations omitted); *see Stansbury v. California*, 511 U.S. 318, 322 (1994) ("[T]he ultimate inquiry is simply whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest."). The Tennessee Supreme Court expounded on the definition of "custody" by stating that the relevant question should be, "under the totality of the circumstances, [whether] a reasonable person in the suspect's position would consider himself or herself deprived of freedom of movement to a degree associated with a formal arrest." *State v. Anderson*, 937 S.W.2d 851, 855 (Tenn.1996). To aid in answering this question, *Anderson* listed several factors relevant to the inquiry:

> [1] the time and location of the interrogation; [2] the duration and character of the questioning; [3] the officer's tone of voice and general demeanor; [4] the suspect's method of transportation to the place of questioning; [5] the number of police officers present; [6] any limitation on movement or other form of restraint imposed on the suspect during the interrogation; [7] any interactions between the officer and the suspect, including the words spoken by the officer to the suspect, and the suspect's verbal or nonverbal responses; [8] the extent to which the suspect is confronted with the law enforcement officer's suspicions of guilt or evidence of guilt; and finally, [9] the extent to which the suspect is made aware that he or she is free to refrain from answering questions or to end the interview at will.

*Anderson*, 937 S.W.2d at 855.

The traffic stop occurred at roughly 1:00 a.m., in the Defendant's driveway. The audiotape recording of the stop, although played for the jury, was not included in the record. Thus, we do not know the precise duration and character of the questioning. With regard to the officer's tone and general demeanor, the Defendant testified that Detective Harbaugh came "sliding in out of nowhere," and he was arrogant. The Defendant also complained that the officer shined his light in the Defendant's face for about thirty seconds. The Defendant arrived at the location in his own vehicle, and there were only two officers present, one merely for safety. With respect to the officer's limitation on the Defendant's movement, Detective Harbaugh testified that the Defendant was not free to walk into his house during the stop. Other than implied suspicions inherently associated with field sobriety tests, it does not appear that the Defendant was confronted with the officer's suspicions until he was actually arrested. Finally, it is unclear to what extent the Defendant was aware that he was free to refrain from answering the officer's questions.

-4-

The Defendant's main complaint is that he was asked numerous times if he had been drinking, and he finally stated that he drank twelve to fourteen beers. We conclude that a reasonable person in the Defendant's position would not conclude that he had been deprived of his freedom to the same extent as a formal arrest. *See Berkemer v. McCarty*, 468 U.S.420, 440 (1984) (concluding motorists at an ordinary traffic stop are not "in custody" for *Miranda* purposes); *see also Pennsylvania v. Bruder*, 488 U.S. 9, 10 n.1 (1988) (reaffirming *Berkemer* with respect to traffic stops where police do not delay formally arresting the suspect to subject them to "sustained and intimidating interrogation at the scene of the initial detention." (quotation omitted)). We can find no reason to conclude this stop was anything other than ordinary. The Defendant was stopped in his driveway where any passers-by would be free to view the interrogation. Additionally, there were only two officers present, and there is no indication that Detective Harbaugh delayed in formally arresting the Defendant. The Defendant was not "in custody" until he was formally arrested and placed in the patrol car. The Defendant is not entitled to relief on this issue.

## B. Motion to Dismiss

The Defendant next contends that he was not taken before a magistrate without unnecessary delay in order for the magistrate to make an independent determination as to whether the Defendant was intoxicated. The Defendant cites to Tennessee Code Annotated section 55-10-203 for this proposition:

> (a) Whenever any person is arrested for a violation of chapter 8 or parts 1-5 of this chapter, the arrested person shall be taken without unnecessary delay before a magistrate or judge within the county in which the offense charged is alleged to have been committed, who has jurisdiction of such offense and is nearest or most accessible with reference to the place where the arrest is made, in any of the following cases:
>
> . . . .
>
> (3) When the person is arrested upon a charge of driving while under the influence of intoxicating liquor or narcotic drugs[.]

The requirement that one be taken before a magistrate "without unnecessary delay" has generally been viewed as a safeguard for citizens against law enforcement officers who might choose to question or detain a suspect for an extended period of time without the benefit of a detached and neutral magistrate's determination of whether there was probable cause for detention. *See State v. Readus*, 764 S.W.2d 770, 773 (Tenn. Crim. App. 1988) ("The most prevalent ill that its explicit condemnation of unnecessary delay was meant to help prevent was the practice of some officers of making arrests, locking the arrestees in jail without benefit of a mittimus, and often not bothering to take the accused before a magistrate for days."). "Absent a bona fide emergency or extraordinary circumstance, a judicial determination of probable cause is 'prompt' if it occurs within 48 hours." *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (citing *Riverside v. McLaughlin*, 500 U.S. 44, 56-

57 (1991)).

The Tennessee Legislature memorialized this rule with respect to traffic offenses in the above cited statute. The statute generally stands for the proposition that one who is arrested for a traffic offense has the right to be brought before a magistrate for a probable cause determination if he demands it (subsection (a)(1)), if the charge is involuntary manslaughter, voluntary manslaughter, or murder (subsection (a)(2)), if the charge is driving while intoxicated (subsection (a)(3)), if the charge is failure to stop in the event of an accident causing death, personal injury or damage to property (subsection (a)(4)), or if the arrestee refuses to promise that he will return to court (subsection (a)(5)). T.C.A. § 55-10-203(a)(1)-(5). Thus, in the case at bar, the Defendant clearly had the right to be brought before a magistrate, without unnecessary delay, for the magistrate to make a probable cause determination, because he was arrested without a warrant for driving while intoxicated. Up to this point, we agree with the Defendant.

However, we must respectfully disagree with the Defendant's view of the role of the magistrate in the probable cause determination. The Defendant urges us to conclude that, in cases such as this, the magistrate must personally view the allegedly intoxicated suspect to make a determination as to whether the suspect is, in fact, intoxicated. We cannot agree that this is the role of the magistrate. In our view, the magistrate's role is to determine whether the officer had probable cause to arrest the suspect without a warrant. *See* Tenn. R. Crim. P. 3-5; David Louis Raybin, Tenn. Crim. Prac. & Proc., § 3.7 (providing that, if a defense attorney is present at the initial hearing, one of his main tasks would be to inquire as to whether the affidavit of complaint states probable cause). Raybin also writes the following in addressing the initial procedure following a warrantless arrest:

> If the defendant is arrested without a warrant, Rule 5 requires the defendant to be taken before the magistrate without unnecessary delay. The police will bring the defendant personally before the magistrate and then apply for a warrant. The application consists of preparing an affidavit of complaint and possibly giving oral sworn testimony in support of the affidavit. If the magistrate is satisfied that probable cause exists, the warrant is issued, and the case proceeds just as in instances where a warrant had been issued prior to arrest.

Raybin, Tenn. Crim. Prac. & Proc., § 3.4.

We can find no law that would support a rule requiring those accused of driving while intoxicated to be brought before a magistrate with such expediency that the magistrate would be able to personally examine the suspect to make an independent factual determination as to whether the suspect is intoxicated. The question in such situations is not whether the suspect is intoxicated when he is before the magistrate, it is whether the suspect was intoxicated while in control of a vehicle on public roads, highways, streets, or alleys of the State of Tennessee. *See* T.C.A. § 55-10-401(a) (2006).

It is unclear from the record when the Defendant was taken before a judicial commissioner

-6-

or magistrate. The Defendant testified he was never afforded that right, but Detective Harbaugh stated that the Defendant was taken in for booking, which traditionally involves an appearance before the judicial commissioner. However, the trial court did not make any findings on the issue because, in its view, the grand jury cured any deficiencies. *See State v. Campbell*, 641 S.W.2d 890, 893 (Tenn. 1982) (stating that an indictment or presentment will "cure all defects emanating from the first arrest and charging procedure"). We likewise conclude the answer to this question is not necessary to the disposition of the case but for a different reason. The Tennessee Supreme, in *Campbell*, stated:

> The failure to bring the defendant before a magistrate, as provided by T.C.A. § 55-10-203(a)(3), results only in release from custody of an accused who is still in jail when the issue is raised, or results in possible exclusion of evidence, e.g., a confession that occurs during the delay. In short, the delay has no consequence in the law unless the defendant is prejudiced by it.

641 S.W.2d at 893; *accord* Raybin, Tenn. Crim. Prac. & Proc., § 19.63. Therefore, even assuming that the Defendant was not promptly taken before a the judicial commissioner, his only remedy would be a release from custody or the exclusion of certain evidence. The Defendant has made no allegation that any evidence was obtained while he was in custody. Thus, he is not entitled to relief on this issue.

## C. Sufficiency of the Evidence[3]

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d

---

[3]The Defendant groups three arguments into one. He challenges the denial of his motion for acquittal, he argues the jury's verdict was clearly erroneous, and the jury's verdict was against the weight of the evidence. We agree these arguments should be addressed together, and we address these three in our sufficiency of the evidence discussion.

651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

The Defendant in this case was convicted of driving while intoxicated. T.C.A. § 55-10-401(a) (2006). The elements of the offense require the Defendant to have been in physical control of a vehicle while on public roads, highways, streets, or alleys, while under the influence of an intoxicant. *Id.*; *State v. Gilbert*, 751 S.W.2d 454, 459 (Tenn. Crim. App. 1988).

The evidence, viewed in the light most favorable to the State, showed that Detective Harbaugh witnessed the Defendant driving his car on the roads of Wilson County, and, in that, he witnessed the Defendant cross the double yellow line several times and the far white line at least once. The Detective turned his patrol car around and proceeded to attempt to pull over the Defendant. Once the Defendant stopped, Detective Harbaugh questioned him, and the Defendant performed three field sobriety tests. In the detective's opinion, the Defendant failed all three. The Defendant's eyes were also red and glassy. Detective Harbaugh testified that he believed the Defendant was under the influence of alcohol.

This evidence is sufficient to survive a motion for judgment of acquittal, and the jury's verdict was not clearly erroneous or against the weight of the evidence. There is sufficient evidence for a reasonable jury to determine beyond a reasonable doubt that the Defendant was driving while under the influence of an intoxicant. The Defendant disputes that the officer witnessed him driving on the roads of Wilson County, as the Defendant claimed he never saw the officer behind him. He additionally argues his bloodshot eyes were a result of his emotional devastation, not alcohol. Additionally, the Defendant stated, at least twice, that he had not been drinking, and no evidence of alcohol consumption was found. The jury, however, resolved these factual issues against the Defendant. On appeal, we are required to view the evidence in the light most favorable to the State.

*Liakas*, 286 S.W.2d at 859.  The Defendant is not entitled to relief on this issue.

## III. Conclusion

Having concluded that the Defendant was not "in custody" during his roadside interrogation, that the role of the magistrate is not to make an independent factual determination as to whether a suspect is intoxicated after an arrest for driving while intoxicated, and that there was sufficient evidence to support a conviction, we affirm the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE